| |
|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY |
| Caption in Compliance with D.N.J. LBR 9004-1(b)<br><br>Gregory S. Kinoian, Esq. (GK-7386)<br>Tel:    (201) 741-6341<br>Email: gkinoian@gmail.com<br>Of Counsel<br>Aboyoun Dobbs LLC<br>77 Bloomfield Avenue<br>Pine Brook, NJ 07058<br>Tel:    (973) 575-9600<br>Fax:   (973) 575-1925<br><br>*Counsel to Alleged Debtor,*<br>*Health Tech Harbor, Inc.* |

| | |
|---|---|
| In re:<br><br>Health Tech Harbor, Inc.,<br><br>             Alleged Debtor. | Involuntary Chapter 7<br><br>Case No. 20-19017 (RG)<br><br>Hearing Date: September 22, 2020<br>                           10:00 a.m. |

**DECLARATION OF LAWRENCE H. MARGOLIS IN SUPPORT OF ALLEGED DEBTOR'S MOTION TO DISMISS INVOLUNTARY CHAPTER 7 PETITION**

LAWRENCE H. MARGOLIS, under penalty of perjury, hereby states and declares the following:

1. I am the incorporator, sole director, chief executive officer, president, treasurer, secretary and 56.6% shareholder of the Alleged Debtor, Health Tech Harbor, Inc. ("HTH"), a Delaware corporation. I also am the sole shareholder, sole director, chief executive officer and president of DGN Pharmacy, Inc., a New Jersey corporation, which does business as PersonalRX (references herein to "PersonalRX" shall include DGN Pharmacy, Inc.). I make this Declaration in support of HTH's motion to dismiss the involuntary petition filed against it and for other relief (the "Motion to Dismiss"). I am familiar with HTH's and PersonalRX's business affairs and

records. I am duly authorized to make this Declaration on HTH's behalf. Except where indicated otherwise, I base this Declaration on my personal knowledge and my review of HTH's books and records.

## INTRODUCTION

2.      The involuntary Chapter 7 petition against HTH was filed in bad faith following an ill-fated, 2½-year effort to merge PersonalRX with another entity, Han Benefit Advantage Inc., a New York corporation, which does business as BenAdvance (references herein to "BenAdvance" shall include HAN Benefit Advantage Inc.) into HTH.

3.      Essentially, the Petitioning Creditors are assuming the role of BenAdvance's surrogate in its dispute with PersonalRX over the failed merger. The filing of the involuntary petition is motivated by the ill will of certain of the Petitioning Creditors, each an investor in HTH (evidenced by convertible promissory notes made by HTH), in an effort by those Petitioning Creditors to, among other things, gain a tactical advantage in negotiations to salvage the merger or to gain greater economic terms than the HTH investors, in particular certain of the Petitioning Creditors, would have realized had the merger been consummated or would realize in a current proposal by PersonalRX to all HTH investors to resolve all of their claims.

## BACKGROUND

**HTH – PersonalRX – BenAdvance**

4.      HTH, the Alleged Debtor, was created in October 2017 to be the post-merger vehicle to house PersonalRX and BenAdvance, as well as other future health care businesses the parties envisioned acquiring or expanding into. The parties envisioned HTH being a healthcare technology company focused on, but not limited to, sourcing promising technology assets in the following healthcare sub-industries and peripheral industries: pharmacy, pharmacogenomics,

insurance, supplemental benefits and disease management. With the intended merger having failed, at no time has HTH had any operations or any tangible assets (facts that the Petitioning Creditors are fully aware of).

5. PersonalRX is primarily in the business of packaging individuals' prescription medications needs into 30-day supplies of daily packets. PersonalRX began operations in 2010 as a simple retail pharmacy selling prescription and non-prescription items to the local marketplace. In February 2011, PersonalRX launched a web-based service providing medication services to camps, schools, therapeutic programs and group homes. In 2015, PersonalRX shifted its business model to focus on individuals going forward. In 2016, PersonalRX launched the current PersonalRX web-based platform, servicing individuals recommended to PersonalRX through group relationships, as well as advertising and marketing directly to consumers for home delivery. PersonalRX is currently licensed in and ships medications to 37 states.

6. Upon information and belief, BenAdvance is a web-based marketplace in the health insurance business that offers access to businesses and associations a broad range of supplemental and voluntary employee benefits, such as dental, vision, disability and life insurance, as well as non-insurance products such as identity theft protection, prepaid legal services and pharmacy discount cards.

7. BenAdvance's founder, chief executive officer and president is Anthony V. Milone. Upon information and belief, Milone also is BenAdvance's largest shareholder with an 18.55% equity position.

8. Milone is also the executive vice-president and 37.74% shareholder of HTH.

9. Milone was involved in all merger discussions from the beginning. Pursuant to the terms of a December 24, 2019 memorandum of understanding regarding, among other things,

the terms of the intended merger executed by Personal RX, BenAdvance and HTH, Milone was a member of the merger oversight committee (along with me, Petitioning Creditor Ramachandra Malya and a fourth individual, Biagio Graffagnino, who is the chief revenue officer of PersonalRX).

### Petitioning Creditors Have Close Ties with BenAdvance

10. Each of the Petitioning Creditors have close ties with BenAdvance and/or Milone.

### Petitioning Creditor Ramachandra Malya

11. Upon information and belief, Malya is a doctor specializing in internal medicine and general nephology based in Houston, Texas. Malya was an early investor in HTH, dating back to December 2017, through a series of convertible promissory notes he purchased from HTH, the last having been purchased in June 2019.

12. The parties intended Malya to be on HTH's board of directors post-merger under the Intended IPO (as defined below) and the terms of the December 24, 2019 memorandum of understanding regarding the intended merger.

13. Upon information and belief, Malya is BenAdvance's second largest shareholder (only after Milone) with a 17.31% equity position and is BenAdvance's largest outside shareholder. Although Malya's involvement with HTH dates back to December 2017, the extent of his ownership interest in BenAdvance was not disclosed to HTH or PersonalRX until May 2020.

14. Because of Malya's positions as an investor in HTH and the largest outside shareholder in BenAdvance, the termination of the merger efforts and a proposal by PersonalRX to all HTH investors to move forward without BenAdvance clearly have significant economic consequences for Malya.

15. Malya attracted many of HTH's investors. Malya often solicited investors based on representations that were inconsistent with convertible promissory note purchase agreements entered into between HTH and investors.

16. Indeed, I have seen communications from Malya directed to current and prospective investors in which, at a time when HTH was advising interested parties that its valuation was $35 million, Malya cavalierly misrepresented that (a) HTH's valuation supposedly was about to see an inflection from "$50 mils to $100 mils very soon," (b) HTH supposedly was holding out for "at least $300 mils+ in value to protect our existing investors," and (c) HTH "could very well be a $400 mils valuation in December 2020" and see "a very conservative 11X ROI." Malya went as far as to write to me "Don't feel shy to say Estimated revenue $40 mils December 2020 and net profit of $3 mils."

17. Malya actively interjected himself in the merger negotiations. Pursuant to the terms of the December 24, 2019 memorandum of understanding regarding the intended merger, Malya was a member of the merger oversight committee.

18. Malya made demands for his own personal interests that were outside the terms of his contractual rights under convertible promissory notes made by HTH and outside the terms of the December 24, 2019 memorandum of understanding.

19. Indeed, as recently as May 21, 2020, Malya asserted that he "was promised" a three percent (3%) of equity in post-merger HTH (based on a $35,000,000 valuation), and further asserted that his demand was "non negotiable" and a "deal breaker." In fact, on May 22, 2020, Mayla threatened to "drag" me into court if he were denied his 3%.

20. On or about May 28, 2020, Malya threatened to strip me of my ownership interest in HTH down to 10% while boosting his personal interest to 10% (which, upon information and

belief, would be in addition to his conversion rights under his convertible promissory notes), and also threatened to strip me of my position as CEO of PersonalRX and HTH post-merger.

### Petitioning Creditor Whealthcare LLC

21.     Upon information and belief, Whealthcare LLC is a private equity fund created by Malya as a special purpose vehicle.

22.     Whealthcare is HTH's largest investor, having purchased a convertible promissory note from HTH in April 2018.

23.     Malya often asserted during the merger negotiations that he was commenting on his own behalf and, as he often reminded, as Whealthcare's representative.

24.     Indeed, as recently as May 6, 2020, Malya asserted that he has "a personal and fiduciary responsibility for [HTH's] investors."

25.     On May 28, 2020, Malya demanded that Whealthcare (which he referred to as his "SPV") be entitled to a 29% discount at a $25 million valuation for HTH.

### Petitioning Creditor Annette Catino

26.     Petitioning Creditor Annette Catino has a long-time, close personal relationship with Milone. Upon information and belief, Catino has long-time experience as an executive in the healthcare industry. She served as president and chief executive officer of QualCare Alliance Networks, Inc., which became a wholly-owned subsidiary of Cigna as of March 1, 2015. Upon information and belief, Milone served as the first chief executive officer of QualCare, preceding Catino.

27.     Catino was an early investor in HTH, evidenced by a convertible promissory note dated November 1, 2017. Catino also made two loans to HTH in January and March 2018, each evidenced by a promissory note.

28. At the time of the Intended IPO, the parties intended Catino to be on HTH's board of directors post-merger. However, under the terms of the December 24, 2019 memorandum of understanding, Catino was not going to be a board member post-merger.

29. Catino actively participated in calls with investors during the merger efforts. During an investor call on or about June 5, 2020, Catino threatened that they were going to get rid of me.

30. On May 27, 2020, Catino threatened to sue PersonalRX and me personally for supposed "fraudulent representation and securities fraud" relating the fact that merger had not occurred. Notably, despite the fact that Catino was brought in as investor in HTH through her close relationship with Milone, Catino made no reference to including Milone or BenAdvance in her litigation threat.

**Petitioning Creditor John Lloyd**

31. Milone attracted Petitioning Creditor John Lloyd to invest in HTH based on a long-time relationship between them. Lloyd is the former co-chief executive officer of Hackensack Meridian Health.

32. Lloyd is an investor in HTH evidenced by two convertible promissory notes from September 2018 and April 2019. Pursuant to the December 24, 2019 memorandum of understanding, Lloyd was intended to be a director of HTH post-merger.

**Intended Merger of PersonalRX and BenAdvance into HTH**

33. Initially, the proposed merger of PersonalRX and BenAdvance was based on a belief that BenAdvance would provide some synergy for future revenue generation after the merger.

7

34. In the beginning, the parties worked in earnest to effectuate the merger. A placement agreement was negotiated with Maxim Group, a broker/dealer registered with the Financial Industry Regulatory Authority, for an initial public offering pursuant to a Regulation A+ registration (which, if approved by the Securities Exchange Commission, allows private companies to raise up to $50 million from the public) (the "Intended IPO"). Maxim Group was also retained to introduce qualified investors to HTH for interim/bridge financing. The law firm of Goodwin Procter LLP was retained as corporate counsel to handle the merger.

35. On or about November 3, 2017, BenAdvance and Personal RX executed a memorandum of understanding setting forth the terms of the intended merger of the businesses. The parties intended for the merger to close after obtaining the financing through the Intended IPO. All of PersonalRX's and BenAdvance's stock were intended to be swapped for HTH stock based on an agreed to ratio of 60% for PersonalRX shareholders and 40% for BenAdvance shareholders.

36. The Reg A+ draft offering statement for the Intended IPO was filed in April 2018. In May 2018, HTH received a letter from the SEC stating that they had no comments the draft offering memorandum.

37. Around the same time as HTH's filing of the Intended IPO, certain market events dramatically altered how Reg A+ IPOs were being perceived. As a result, a decision was made to not go forward with the Intended IPO. The terms of the November 3, 2017 memorandum of understanding to, among other things, change the triggering event for the merger to close from obtaining the necessary financing through the Intended IPO to obtaining the necessary financing through private placement financing.

38.     In the meantime, PersonalRX and BenAdvance each continued to require funding for operations pending the merger.

**HTH Investors**

39.     PersonalRX and BenAdvance attracted investors interested in HTH, including, but not limited to, each of the Petitioning Creditors.

40.     Convertible promissory notes and convertible promissory note purchase agreements were executed by HTH and the investors that promised the investors, under certain terms and conditions, to convert their investments from debt into equity in HTH. The expectations of the parties were that the investors would convert their debt into equity in HTH after the merger.

41.     In total, $9,922,500 was raised from sixty-four investors, as evidenced by convertible promissory notes and convertible promissory note purchase agreements, from November 2017 through June 2019 in seven tranches.

42.     After 2½ years of trying to accomplish the merger, in May 2020, HTH and PersonalRX learned for the first time, when BenAdvance finally provided (after repeated requests by HTH's merger counsel) a capitalization table, that, in addition to Milone's equity interest in BenAdvance (which was not surprising), several of the HTH investors, including Petitioning Creditor Malya, are also shareholders in BenAdvance with considerable interests.

43.     Malya's 17.31% equity interest in BenAdvance is second only to Milone's 18.55% equity interest. They are BenAdvance's two largest shareholders. The other BenAdvance shareholders who invested in HTH are William Rabetz, Paul Stamatis and Dustin Wilson.

44.     The invested funds were redirected to PersonalRX and BenAdvance for their respective operations, which were documented as two loans evidenced by notes between HTH

9

and PersonalRX, with a balance due of approximately $7,654,571, and HTH and BenAdvance, with a balance due of approximately $2,256,336.

### Failed Merger Efforts

45. Still keen on having the merger succeed, HTH, PersonalRX and BenAdvance entered into a new memorandum of understanding on December 24, 2019. That memorandum of understanding, among other things, set a March 31, 2020 closing deadline with the only contingency being the raising of an additional $1.5 million, which was accomplished (which is part of the total investments of $9,922,500).

46. Additionally, the December 24, 2019 memorandum of understanding includes a dispute resolution provision, which mandates (a) non-binding mediation with respect to any controversy or claims that arises out of or related to the memorandum of the breach of thereof, and (b) arbitration in the event of a dispute between the parties with respect to any issue arising under the memorandum "as a matter to be decided by arbitration."

47. Despite PersonalRX being ready, willing and able to complete the merger in accordance with the terms of the December 24, 2019 memorandum of understanding, and despite PersonalRX's substantial efforts to try to complete the merger, BenAdvance and certain HTH investors, including certain of the Petitioning Creditors, repeatedly sought to alter the terms of the parties' understanding, engaged in unreasonable delay tactics and ultimately failed to follow through with the merger.

48. PersonalRX produced all of the documents requested of it by HTH's merger counsel, as well as additional documents and financial information requested at times by Milone, Malya and Catino.

49. BenAdvance failed to produce all of the documents requested of it by HTH's merger counsel, and many of the documents that were produced were not delivered expeditiously, such as BenAdvance's capitalization table.

50. In retrospect, it is now clear to me that, in March, April and May 2020, BenAdvance, Milone and Malya engaged in delay tactics, such as repeatedly requesting certain documents that previously had been provided and demanding to see certain documents (as required by HTH's merger counsel) from PersonalRX before BenAdvance would produce its version of the same documents.

51. BenAdvance was not ready (or was unwilling) to close on the merger by a March 31, 2020 deadline set forth in the December 24, 2019 memorandum of understanding and still was not ready (or was unwilling) to commit to closing on the merger by June 30, 2020.

52. In the meantime, after the March 31 2020 deadline passed, PersonalRX experienced cash flow problems. The $1.5 million of additional funding raised pursuant to the December 24, 2019 memorandum of understanding that was intended to help fund the operations of PersonalRX and BenAdvance through March 31, 2020. BenAdvance's inability or unwillingness to close on the merger by March 31, 2020, put substantial financial strain on PersonalRX.

53. On May 28, 2020, Malya presented a "Rescue Plan" that completely undid the terms of the December 24, 2019 memorandum of understanding and included the threats to, among other things, reduce my ownership interest in HTH to only 10%, while increasing his personal share to 10% in HTH (which, upon information and belief, would be in addition to his conversion rights under his convertible promissory notes).

11

54.     Eventually, after considerable investments by PersonalRX of time, effort and expense to try to complete the merger, PersonalRX was left with no alternative than to declare, on or about May 29, 2020, that it was withdrawing from any further negotiations regarding the merger, thereby terminating the merger.

55.     Thereafter, during a contentious call with investors on June 5, 2020 (at which, among other things, Catino threatened that they were going to get rid of me), Milone claimed that they had another potential investor that would enable them to close the merger. I asked for information about the new investor, which I received several days later. The supposed offer, at best, could be characterized as illusory. Among offer's deficiencies was that there was no firm commitment to close the merger by a June 30, 2020. On June 9, 2020 I advised BenAdvance and the investors that PersonalRX would not go forward with the merger.

**PersonalRX Proposal to HTH Investors to Move Forward without BenAdvance**

56.     After the merger efforts failed, PersonalRX proposed to all of the HTH investors, including each of the Petitioning Creditors, that they could convert, at each investor's option, their convertible promissory notes with HTH into either equity in PersonalRX, a new term note with PersonalRX as obligor or a combination of the two. That offer still stands, and has been accepted by 16 of the HTH investors representing $967,500 of the total convertible promissory notes.

57.     I believe that the Petitioning Creditors have rejected the proposal because of their close relationships with Milone and BenAdvance. Indeed, Malya's 17.31% interest in BenAdvance surely colors his view of PersonalRX's proposal.

58.     After the filing of the involuntary Chapter 7 petition, on or about August 11, 2020, in a conversation I had with Petitioning Creditor Lloyd, I learned that he never received

12

emails from me regarding PersonalRX's proposal to the HTH investors because his email address had changed and emails were not being forwarded to him from the email address the parties had been using for two years for him. It is in unclear whether Malya or Catino made Lloyd aware of PersonalRX's offer before recruiting him to join the involuntary petition. For these reasons, I am not certain whether Lloyd would have given consideration to PersonalRX's proposal before joining the Superior Court Action (defined below) or the involuntary petition had he received it beforehand.

### Superior Court Action Commenced against HTH by Certain Investors

59.     Shortly after PersonalRX declared that it was withdrawing from any further negotiations regarding the merger and made its proposal to the HTH investors to move on without BenAdvance, on July 1, 2020, a group of, initially, 10 of the HTH investors, including two of the Petitioning Creditors (Malya and Whealthcare) and at least one HTH investor who (like Malya) is also an outside shareholder of BenAdvance (William Rabetz), commenced an action against HTH in the Superior Court of New Jersey, Law Division, Bergen County, asserting a breach of the plaintiffs' convertible promissory notes and seeking the appointment of a statutory receiver (the "Superior Court Action"). The Superior Court Action is pending (though now stayed by the filing of the involuntary petition) under Mayla, et al. v. Health Tech Harbor, Inc., BER-L-3798-20.

60.     Most of the original plaintiffs are HTH investors brought in by Malya. One week after filing the Superior Court Action, on July 8, 2020, an amended complaint was filed which added three more HTH investors as plaintiffs, including one of the Petitioning Creditors (Lloyd) and at least one more outside shareholder of BenAdvance (Paul Stamatis). Other than the

13

addition of three more HTH investors as plaintiffs, the amended complaint left the two counts in the original complaint unchanged and did not add any additional counts.

62. The Superior Court Action includes allegations blaming me and PersonalRX for the merger with BenAdvance not being consummated. Notably, however, the Superior Court Action fails to include any allegations regarding Malya's, Milone's or BenAdvance's involvement in the failed merger.

62. HTH intended to file an answer in the Superior Court Action, along with numerous counterclaims and third-party claims arising from the actions of BenAdvance, certain of the plaintiffs (including certain of the Petitioning Creditors) and certain other parties during the failed merger efforts.

**Filing of Involuntary Chapter 7 Petition**

63. On July 29, 2020, three weeks after the filing of the amended complaint in the Superior Court Action and two weeks before HTH's time to file its answer, counterclaims and third-party claims, the Petitioning Creditors (including three of the plaintiffs in the Superior Court Action (i.e., Malya, Whealthcare and Lloyd)) filed the involuntary Chapter 7 petition against HTH.

64. Upon information and belief, Catino, through her counsel (who is an attorney at McCarter & English, LLP, counsel to the Petitioning Creditors), instigated the filing of the involuntary petition.

65. Upon information belief, through a letter distributed by Catino to the HTH investors on or about August 3, 2020 and a conference call among HTH investors held on or about August 14, 2020 (I did not participate in the call, nor was I given advance notice of it), Catino and/or McCarter solicited other HTH investors to join the involuntary petition. Upon

14

further information and belief, McCarter would only charge each investor who joins the petition a *de minimis* $250 fee. Upon further information and belief, there was confusion during the August 14, 2020 call as to who McCarter represents or would represent with, evidently, some HTH investors believing McCarter represents HTH itself.

66. Adding additional HTH investors to the involuntary petition should not change the fact that the totality of the circumstances demonstrate that this boils down to a dispute between PersonalRX and BenAdvance, neither of which presently have the financial wherewithal to repay the HTH investors in full on the convertible promissory notes, and that the involuntary petition against HTH is merely a bad faith tactic to bring PersonalRX back to the negotiating table.

### HTH SHOULD NOT BE IN BANKRUPTCY, THE INVOLUNTARY PETITION SHOULD BE DISMISSED

67. While ostensibly targeting HTH, the involuntary Chapter 7 petition and the Superior Court Action are the realization of threats made by Malya, on his behalf and as a representative of Whealthcare, and Catino to engage in litigation to harass me and to thwart my efforts to move forward with PersonalRX without merging with BenAdvance.

68. Frankly, not only should the involuntary petition be dismissed, but the Superior Court Action should be dismissed as well (I understand that is beyond this Court's jurisdiction), and the parties should be directed to pursue non-binding mediation and/or arbitration in accordance with the dispute resolution provision of the December 24, 2019 memorandum of understanding.

69. Indeed, my current efforts to attract private investors in PersonalRX, which, if successful, would provide a substantive means of dealing with the HTH investors' claims, are endangered by the risk of PersonalRX being dragged into pointless litigation.

15

70. The Petitioning Creditors are fully aware that at no time has HTH had any operations and that HTH does not have any tangible assets. As stated, HTH's only assets are the notes it holds against PersonalRX and BenAdvance.

71. As recently as May and June 2020, the Petitioning Creditors Malya and through him Whealthcare were provided with various information regarding the current financial conditions of PersonalRX and BenAdvance, respectively, as well as a balance sheet for HTH. Upon information and belief, Petitioning Creditor Catino also may have been provided with some or all of the same information (it is uncertain if Petitioning Creditor Lloyd received any of the information owning to the issue with his email address, as discussed above).

72. Accordingly, some or all of the Petitioning Creditors were fully aware or should have been aware, before filing the involuntary Chapter 7 petition, that neither PersonalRX nor BenAdvance currently has the ability to repay their notes to HTH, which means that the investors, including the Petitioning Creditors, should have no reasonable expectation to be repaid in full on their convertible promissory notes at this time.

73. With the Petitioning Creditors acting as BenAdvance's surrogate, BenAdvance might be viewed as a jilted lover left at the altar. However, a more apt analogy would be that BenAdvance refused to show up for its wedding and now BenAdvance's guests are blaming PersonalRX for leaving the church.

74. Regardless, this remains a dispute between PersonalRX and BenAdvance over the failed merger efforts. PersonalRX has proposed to the HTH investors to move on without BenAdvance. The Petitioning Creditors, as BenAdvance's surrogate, have filed the involuntary Chapter 7 petition in bad faith, motivated by ill will to gain a tactical advantage in negotiations to either salvage the merger or gain superior economic terms than the investors would have realized

16

if the merger had been consummated or the investors would realize based on PersonalRX's current proposal.

75. Moreover, HTH is what it is. This is not a debtor where there might be a concern over preferential payments to certain creditors or the dissipation of assets. HTH has no resources to make any payments and has no assets that could be dissipated.

## **CONCLUSION**

76.     For the reasons set forth herein, on behalf of HTH, I respectfully request that the Court find that the involuntary Chapter 7 petition was filed in bad faith and therefore determine that the Motion to Dismiss the involuntary petition should be granted.

**I hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge, information and belief.**

Dated: August 20, 2020

_____             _____
                                            Lawrence H. Margolis
                                            President and Chief Executive Officer,
                                            Health Tech Harbor, Inc., Alleged Debtor

18

| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY | |
|---|---|
| Caption in Compliance with D.N.J. LBR 9004-1(b)<br><br>Gregory S. Kinoian, Esq. (GK-7386)<br>Tel:    (201) 741-6341<br>Email: gkinoian@gmail.com<br>Of Counsel<br>Aboyoun Dobbs LLC<br>77 Bloomfield Avenue<br>Pine Brook, NJ 07058<br>Tel:    (973) 575-9600<br>Fax:    (973) 575-1925<br><br>*Counsel to Alleged Debtor,*<br>*Health Tech Harbor, Inc.* | |
| In re:<br><br>Health Tech Harbor, Inc.,<br><br>                    Alleged Debtor. | Involuntary Chapter 7<br><br>Case No. 20-19017 (RG)<br><br>Hearing Date: September 22, 2020<br>                              10:00 a.m. |

**ATTORNEY CERTIFICATION**
**RE: FACSIMILE SIGNATURE**

I, Gregory S. Kinoian, attorney for Health Tech Harbor, Inc., the above-captioned Alleged Debtor, having electronically filed a Declaration, or other pleading required to be signed under oath or penalty of perjury, containing the facsimile signature of Lawrence H. Margolis, in the above captioned matter, hereby certify in accordance with the Court's *General Order Establishing Procedure for Electronic Submission of Documents Containing Facsimile Signatures*, dated November 19th 2004:

    1.    The Declarant has acknowledged the genuineness of the original signature.

    2.    The original document was executed in completed form prior to facsimile transmission.

    3.    The document or a copy with an original signature affixed to it will be obtained

1

by me within seven (7) business days after the date the document or pleading with the facsimile signature was electronically filed with the Court.

    4.    I will maintain the document containing the original signature in paper form for a period not less than seven years from the date of closure of the case or proceeding in which the document is filed.

    I hereby certify that the above is true.

Dated: August 20, 2020

    Respectfully submitted,

*/s/ Gregory S. Kinoian*
Gregory S. Kinoian (GK-7386)
Of Counsel
Aboyoun Dobbs LLC
77 Bloomfield Avenue
Pine Brook, NJ 07058
Counsel to Alleged Debtor,
Health Tech Harbor, Inc.