UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

Jeffrey T. Testa, Esq.
Phillip S. Pavlick, Esq.
**McCarter & English, LLP**
100 Mulberry Street, Four Gateway Center
Newark, New Jersey 07102
Telephone: (973) 622-4444
Facsimile: (973) 624-7070
Email: jtesta@mccarter.com
          ppavlick@mccarter.com

and

Gregory J. Mascitti, Esq. (admitted *pro hac vice*)
**McCarter & English, LLP**
Worldwide Plaza
825 Eighth Avenue, 31st Floor
New York, New York 10019
Telephone: (212) 609-6800
Facsimile (212) 609-6921
Email: gmascitti@mccarter.com

*Counsel for Petitioning Creditors*

| | |
|---|---|
| In re: | Involuntary Chapter 7 |
| HEALTH TECH HARBOR, INC. | Case No. 20-19017 (RG) |
| Alleged Debtor. | |

**MEMORANDUM OF LAW IN OPPOSITION TO ALLEGED DEBTOR'S MOTION TO
DISMISS INVOLUNTARY CHAPTER 7 PETITION**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................1

JURISDICTION .................................................................................................................3

STATEMENT OF FACTS ..................................................................................................4

LEGAL ARGUMENT.......................................................................................................15

I.      IT IS UNDISPUTED THAT THE REQUIREMENTS OF SECTION 303 HAVE
        BEEN SATISFIED ...............................................................................................15

II.     THE COURT SHOULD DENY HTH'S MOTION TO DISMISS BECAUSE
        THE INVOLUNTARY PETITION WAS FILED IN GOOD FAITH ...........................16

III.    THE JOINDER OF ADDITIONAL CREDITORS DEMONSTRATES THAT
        THE INVOLUNTARY PETITION WAS NOT FILED IN BAD FAITH AND
        CONSTITUTES COLLECTIVE CREDITOR ACTION ..................................................23

IV.     THE COURT SHOULD NOT ENTER A SCHEDULING ORDER AND
        PROMPTLY ENTER AN ORDER FOR RELIEF............................................................24

CONCLUSION...................................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**FEDERAL CASES**

*In re Anmuth Holdings LLC*,
   600 B.R. 168 (Bankr. E.D.N.Y. 2019)........................................................................19, 20, 21

*In re CNG Foods LLC*,
   No. 16-43278, 2020 WL 4219679 (Bankr. E.D.N.Y. July 13, 2020)......................................21

*In re Diloreto*,
   388 B.R. 637 (Bankr. E.D. Pa. 2008), *aff'd*, 442 B.R. 373 (E.D. Pa. 2010)............................18

*In re Dino's, Inc.*,
   183 B.R. 779 (S.D. Ohio 1995) ..............................................................................................21

*Fetner v. Haggerty*,
   99 F.3d 1180 (D.C. Cir. 1996) ..........................................................................................22, 23

*In re FKF Madison Park Grp. Owner, LLC*,
   435 B.R. 906 (Bankr. D. Del. 2010) .......................................................................................23

*In re Forever Green Athletic Fields, Inc.*,
   804 F.3d 328 (3d Cir. 2015)........................................................................................14, 15, 16

*In re Grossinger*,
   268 B.R. 386 (Bankr. S.D.N.Y. 2001)....................................................................................19

*In re Houston Reg'l Sports Network, L.P.*,
   505 B.R. 468 (Bankr. S.D. Tex. 2014) ...................................................................................22

*In re Hrobuchak*,
   No. 14-02098, 2015 WL 1651074 (Bankr. M.D. Pa. Apr. 8, 2015) ........................................22

*In re Luxeyard, Inc.*,
   556 B.R. 627 (Bankr. D. Del. 2016) .......................................................................................21

*In re Manno*,
   No. 08-15588, 2009 WL 236844 (Bankr. E.D. Pa. Jan. 30, 2009) .........................................20

*In re Metrogate, LLC*,
   No. 15-12593, 2016 WL 3150177 (Bankr. D. Del. May 26, 2016)........................................16

*In re Myers*,
   491 F.3d 120 (3d Cir. 2007)....................................................................................................20

*In re On-Site Fuel Serv., Inc.*,
    No. 18-04196, 2019 WL 409422 (Bankr. S.D. Miss. Jan. 30, 2019) ......................................22

*In re Reveley*,
    148 B.R. 398 (Bankr. S.D.N.Y. 1992) ........................................................................19, 20, 21

*In re Silverman*,
    230 B.R. 46 (Bankr. D.N.J. 1998) ...........................................................................................18

*In re Square at Falling Run, LLC*,
    472 B.R. 337 (Bankr. N.D.W. Va. 2012)..................................................................................18

*In re Tippett*,
    No. 08-00548-8, 2008 WL 2020348 (Bankr. E.D.N.C. May 8, 2008) ....................................21

*In re Zaver*,
    520 B.R. 159 (Bankr. M.D. Pa. 2014) .....................................................................................20

## FEDERAL STATUTES

11 U.S.C. § 303........................................................................................................1, 14, 15, 19, 23

28 U.S.C. § 157(b) ........................................................................................................................3

28 U.S.C. § 1334 ...........................................................................................................................3

28 U.S.C. § 1409(a) ......................................................................................................................3

## PRELIMINARY STATEMENT

Petitioning Creditors, Annette Catino ("Ms. Catino"), Ramachandra Malya ("Dr. Malya"), John Lloyd ("Mr. Lloyd"), Whealthcare LLC ("Whealthcare"), Ravi Chenna, Madhavi Chenna, Krishnan Murthi Kurusamy, P.H. Vanodia, Aashish Pandya, Devesh Pandya, Doraraju Kurusamy, Lily Y. Loh, Umesh Kumar, Vijay Koka, Vishal Patel, Kavita Majithia, Sanjaykumar R. Kamani, Manmath Panda and Mohammed Ahmed (collectively, the "Petitioning Creditors"), respectfully submit this Memorandum of Law in Opposition to the Motion of Alleged Debtor, Health Tech Harbor, Inc. ("HTH") to Dismiss Involuntary Chapter 7 Petition, Request for Entry of Joint Scheduling Order, Among Other Things, Scheduling an Evidentiary Hearing and Granting Other Relief (the "Motion").

Based upon the undisputed facts, the Petitioning Creditors have satisfied the requirements for entry of an order for relief.  The Petitioning Creditors consist of 19 creditors of HTH.  It is undisputed that each of the Petitioning Creditors holds a claim against HTH that is not contingent as to liability and is not subject to bona fide dispute.  It is also undisputed that the claims of the Petitioning Creditors exceed, in the aggregate, $16,750 and are not secured by any liens.  It is also undisputed that HTH is not paying its debts as they become due.  Based upon the undisputed facts, this Court should determine that the Petitioning Creditors have satisfied the statutory requirements for entry of an order for relief pursuant to 11 U.S.C. § 303.

Notwithstanding these undisputed facts, HTH argues that HTH's creditors should be denied the benefits arising from the appointment of a chapter 7 trustee because the Petitioning Creditors purportedly filed the involuntary petition in "bad faith."

HTH, through its shareholders Larry Margolis ("Margolis") and Anthony Milone ("Milone"), obtained approximately $10 million of loans from investors based upon the

1

representation that HTH would own the business operations of DGN Pharmacy, Inc. d/b/a PersonalRX ("PersonalRX"), a company owned and controlled by Margolis, and Han Benefit Advantage Inc. d/b/a BenAdvance ("BenAdvance"), a company owned and controlled by Milone. Although ostensibly loaned to HTH for working capital, Margolis and Milone redirected the funds to PersonalRX and BenAdvance through loans made by HTH to PersonalRX and BenAdvance.   Margolis and Milone advised HTH's creditors that this bridge financing was necessary to consummate HTH's acquisition of PersonalRX and BenAdvance.   HTH, PersonalRX, and BenAdvance repeatedly represented to HTH's creditors that the contemplated transactions would occur and omitted any disclosures of the risks to HTH's creditors if the contemplated transactions did not occur.  Given that the owners of PersonalRX and BenAdvance were also the owners of HTH, the creditors of HTH had no reason to doubt that the transactions upon which their loans were premised would actually occur.  However, after 2 ½ years and approximately $10 million of loans, PersonalRX and BenAdvance advised HTH's creditors that they would not proceed with the transactions that would transfer ownership of PersonalRX and BenAdvance to HTH.  The Petitioning Creditors understand that BenAdvance and PersonalRx blame each other for the failure of the contemplated transactions to occur.  Regardless of which party is to blame, one fact remains undisputed: the creditors who loaned money to HTH have been left with claims against a shell corporation that purportedly has "no assets" and no ability to repay the debts owed to HTH's creditors.  As a result of the loan scheme used by Margolis and Milone, and as a result of their decisions not to proceed with the transactions by which HTH would acquire the assets of PersonalRX and BenAdvance, HTH's creditors have been left with claims against HTH – an entity that purportedly has no business operations or assets (other than the amounts owed to it by PersonalRX and BenAdvance) – as the only means for recovering

2

payment on their notes.  Even worse, given the loan scheme used by Margolis and Milone, HTH's creditors must rely on Margolis to cause HTH to demand and enforce the payment obligations of PersonalRX and BenAdvance.

The Petitioning Creditors did not file the Involuntary Petition in "bad faith."  Rather, the Petitioning Creditors have filed the Involuntary Petition in an effort to maximize their recovery on the amounts owed to them by HTH.  The allegations of "bad faith" are nothing more than an effort to deprive HTH's creditors of their recourse to the bankruptcy process to maximize the recovery on their claims against HTH.  The finger-pointing, blame game between Margolis/PersonalRX and Milone/BenAdvance is irrelevant to the relief sought by the Petitioning Creditors by this Involuntary Petition.  Irrespective of which party may be to blame for the failure of the merger transaction, the Petitioning Creditors seek the entry of an order for relief because they believe that the present bankruptcy proceeding will provide the transparency, means, and process that will most effectively and efficiently maximize their chances of recovery.

For the foregoing reasons, as amplified below, the Court should deny the Motion and promptly enter an order for relief.

## **JURISDICTION**

Pursuant to 28 U.S.C. §§ 1334 and 157(b), the Court has jurisdiction over this matter. This is considered a "core" proceeding under 28 U.S.C. § 157(b)(2)(A).  Venue lies in this Court pursuant to 28 U.S.C. § 1409(a).  This Opposition to HTH's Motion to Dismiss is filed in accordance with D.N.J. LBR 9013-2(a)(2).

ME1 34253702v.1

## STATEMENT OF FACTS

**Ownership and Control Over HTH, PersonalRX, and BenAdvance**

HTH is a Delaware corporation formed in October 2017.  HTH is owned by Lawrence

Margolis and Anthony Milone.  Margolis is the "incorporator, sole director, chief executive

officer, president, treasurer, secretary and 56.6% shareholder" of HTH, with Milone being "the

executive vice-president and 37.74% shareholder of HTH."  Margolis is also the "sole

shareholder, sole director, chief executive officer and president" of PersonalRX.  (ECF No. 10-1

"Margolis Decl." ¶ 1.)  Milone is BenAdvance's "founder, chief executive officer and president"

and "largest shareholder with an 18.55% equity position."  (Margolis Decl. ¶¶ 7-8.)

Upon information and belief, Margolis exercises control over HTH and PersonalRX, and

Milone exercises control over BenAdvance.  With the exception of a minority equity interest

held by Dr. Malya in BenAdvance, none of the Petitioning Creditors have any equity interest in

HTH, PersonalRX, or BenAdvance.  Moreover, none of the Petitioning Creditors is a director or

officer of HTH, PersonalRX, or BenAdvance or otherwise exercises any control over HTH,

PersonalRX, or BenAdvance.

**Creditors' Loans to HTH and HTH's Loans to PersonalRX and BenAdvance**

HTH obtained loans from investors based upon Margolis' and Milone's representations

that HTH would acquire the business operations of PersonalRX and BenAdvance, as well as

other future acquisitions.  The confidence with which Margolis and Milone made these

representations to investors is exemplified in a 2017 press release indicating that the acquisition

of PersonalRX and BenAdvance had already occurred. On November 21, 2017, HTH issued the

press release announcing that it had selected Maxim Group LLC (an investment banking firm) to

provide strategic planning, investment banking and securities services for an upcoming Reg A+

4

offering.   The press release stated that "**Health Tech Harbor emerged from an alliance between two national health technology companies – PersonalRX and BenAdvance**."   The press release further stated that "**[a]s the first two companies in Health Tech Harbor**, PersonalRX and BenAdvance work independently as well as together, gaining efficiencies from shared resources and relationships, and identifying health tech acquisition targets well-suited to fuel growth and profitability for all companies within Health Tech Harbor."   According to the press release, Maxim Group LLC would "support Health Tech Harbor's financial growth and **expansion of its footprint** within the marketplace."   A copy of the November 21, 2017 press release is attached as Exhibit B to the Declaration of Annette Catino sworn to September 15, 2020 (the "Catino Declaration").

In an email to HTH's creditors dated December 19, 2018, Margolis wrote that HTH "is committed to completing the merger among [BenAdvance], [PersonalRX] in the [HTH] holding company…."   In the same email, Milone further echoed Margolis's assurances and stated "[r]egardless of the direction of our institutional financing, we will complete our merger with [PersonalRX] and formalize the [HTH] company in the next few months…."   A copy of the December 19, 2018 email is attached to the Catino Declaration as Exhibit C.

On March 15, 2019, Margolis emailed HTH's creditors to provide "an update on [HTH's] operations and financing plan."[1]   Margolis again assured HTH's creditors that "[t]he planned merger of PersonalRX and BenAdvance is on track."   A copy of the March 15, 2019 email is attached to the Catino Declaration as Exhibit D.

Given the overlapping ownership interests of Margolis and Milone in HTH, PersonalRX, and BenAdvance, HTH's creditors had no reason to doubt that the contemplated transactions

---

[1] Operations that, according to Margolis's recent declaration, HTH never had.

would occur – and no warnings as to the risks and consequences if the contemplated transactions failed to occur.

HTH sold notes to investors pursuant to certain Convertible Promissory Note Purchase Agreements (the "Note Purchase Agreements").  Upon information and belief, each of the Note Purchase Agreements provided that "[t]he Company [HTH] shall use the proceeds from the issuance and sale of the Notes for working capital and other general corporate purposes." Notwithstanding the terms of the Note Purchase Agreements, HTH did not use the loan proceeds for its working capital or its corporate purposes.  Rather, Margolis and Milone caused HTH to use 100% of the loan proceeds to finance Margolis' and Milone's other businesses: PersonalRX and BenAdvance.  Margolis and Milone advised investors that such "bridge financing" by HTH to PersonalRX and BenAdvance was necessary to consummate HTH's acquisition of those entities.  As a result, the approximately $10 million of loans that HTH received from investors were redirected by HTH as loans to PersonalRX and BenAdvance.  As Margolis admits in his Declaration, HTH extended two loans to PersonalRX and BenAdvance with balances due of approximately $7,654,571 and $2,256,336, respectively.  (Margolis Decl. ¶ 44.)  According to Margolis, these loans were documented by notes between HTH and PersonalRX and BenAdvance.  (*Id.*)  Upon information and belief, Margolis and Milone caused HTH to loan the funds obtained from HTH's investors to PersonalRX and BenAdvance through unsecured promissory notes, due upon demand by HTH, with interest at the rate of 3% per annum (an interest rate that was lower than the interest rate payable by HTH to its creditors).  ***Most troubling, HTH loaned these funds to PersonalRX and BenAdvance without any contractual commitment by PersonalRX or BenAdvance to consummate the transactions for which the loans were being made.***

Margolis' and Milone's use of this loan scheme resulted in HTH's creditors having claims against HTH, and HTH have claims against PersonalRX and BenAdvance – but effectively insulated PersonalRX and BenAdvance from any direct claims by HTH's creditors for payment of their notes.  Having never transferred any assets to HTH, and lacking any contractual commitment to do so, Margolis and Milone have left HTH's creditors with claims against a shell company.  As a result, HTH's creditors' ability to recover on the notes issued by HTH is dependent upon PersonalRX and BenAdvance performing their obligations to HTH, and PersonalRX and BenAdvance have no obligation to perform unless and until HTH (controlled by Margolis) demands payment from them.  HTH's creditors' ability to recover on the notes issued by HTH is ultimately dependent upon Margolis causing HTH to demand and enforce payment of PersonalRX's and BenAdvance's obligations to HTH.  HTH's creditors presently having no legal right to enforce such performance, and Margolis and Milone are in the conflicted position of having to cause HTH to enforce its remedies against PersonalRX and BenAdvance (which purportedly do not have the ability to repay the amounts owed to HTH).

**Misrepresentations and Omissions Regarding HTH's Acquisition of PersonalRX and BenAdvance**

Of course, no investor that purchased a note from HTH intended to lend money to a shell company with no assets and no ability to repay its debts.  In order to induce investors to loan money to HTH, Margolis and Milone made numerous representations that HTH had either acquired or would acquire the business operations of PersonalRX and BenAdvance and omitted any disclosure of the risks or consequences arising from the failure of that acquisition to occur.

In support of their representations to HTH's creditors, Margolis and Milone produced a "Health Tech Harbor, Inc. Merger Memorandum of Understanding" between PersonalRX and BenAdvance dated November 3, 2017 (the "2017 MOU").  A copy of the 2017 MOU is attached

7

the Catino Declaration as Exhibit E.  The 2017 MOU provided that HTH "will purchase the assets and/or stock of [BenAdvance] and [PersonalRX]."  According to the 2017 MOU, "[u]pon closing of the REG A+ financing, the shareholders of both [BenAdvance] and [PersonalRX] shall swap stock in their entities for HTH stock."  Post-closing, BenAdvance was to "operate as a wholly owned subsidiary of HTH," and the assets of PersonalRX were to be purchased by a new wholly owned subsidiary of HTH to be called "PersonalRX, Inc."  The last paragraph of the 2017 MOU provides that "HTH legal counsel will provide the required documentation making the terms and conditions of this MOU legally binding."  ***Upon information and belief, Margolis and Milone never caused the 2017 MOU to become legally binding on PersonalRX or BenAdvance.***

Originally, HTH represented that it would launch the REG A+ financing in early 2018. However, after obtaining millions of dollars of loans through HTH's creditors, PersonalRX and BenAdvance decided not to proceed with the REG A+ financing contemplated by the 2017 MOU.[2]   Instead, on March 15, 2019, PersonalRX and BenAdvance entered into an Addendum to the 2017 MOU (the "March 2019 MOU") which replaced the reference to "REG A+ financing" in the 2017 MOU to "a single Private Placement amounting to $5 million or more." The March 2019 MOU further provided that "[i]n 2019 to date we have raised $1 million in bridge funding.  We are now seeking an additional $1 million in the bridge, followed by a $3 million private placement.  Once $1 million of this private placement is received, we will effectuate the merger." The March 2019 MOU also amended the last paragraph of the 2017 MOU to read as follows: "HTH legal counsel in conjunction with counsel of both [BenAdvance]

---

[2] According to the December 19, 2018 email attached to the Catino Declaration as Exhibit C, after the initial paperwork REG A+ financing had been filed with the SEC, "Maxim's excitement in bringing [HTH] to market cooled, for several reasons, among them being the lack of performance by RegA+ equities, and partly due to Maxim's lack of confidence in the RegA+ process."

8

and [PersonalRX] will provide the required documentation making the terms and conditions of this MOU legally binding…." ***Again, upon information and belief, Margolis and Milone never caused the March 2019 MOU to become legally binding on PersonalRX or BenAdvance.***

Upon information and belief, HTH subsequently raised the $1 million private placement that was supposed to trigger the effectuation of the merger pursuant to the terms of the March 2019 MOU.   However, despite meeting the $1 million private placement requirement, PersonalRX and BenAdvance still did not effectuate the merger.

By late 2019, PersonalRX and BenAdvance were in need of additional "bridge financing" to purportedly consummate the merger transaction with HTH.  In order to induce investors to make further loans to HTH, PersonalRX and BenAdvance entered into a Memorandum of Understanding dated December 24, 2019 (the "December 2019 MOU").  The stated purpose of the December 2019 MOU was "to set forth certain binding agreements with respect to…the contemplated and negotiated merger of [PersonalRX] and [BenAdvance] such that the surviving entity shall be a wholly-owned subsidiary of [HTH]…."  Pursuant to the December 2019 MOU, HTH, PersonalRX, and BenAdvance agreed if HTH raised at least $1.5 million by March 9, 2020, then "the merger closing will be scheduled and consummated on or before March 31, 2020."   Again, HTH raised the $1.5 million required to consummate HTH's acquisition of PersonalRX and BenAdvance under the December 2019 MOU, and, again, PersonalRX and BenAdvance failed to consummate the transaction.

**Margolis' Termination of the Merger Transaction and Dissipation of Assets**

On May 31, 2020, contrary to the numerous representations and assurances made to HTH's creditors over 2 ½ years, and despite HTH obtaining approximately $10 million of loans to consummate the transaction, Margolis informed HTH's creditors that PersonalRX was

9

withdrawing from all negotiations and terminating the merger transaction.  Upon information and belief, Margolis refused to proceed with the merger transaction because he would not have had a controlling interest in HTH or PersonalRX after the merger transaction.  BenAdvance subsequently advised HTH's creditors that it also would not proceed with the merger transaction.

Upon information and belief, at some time prior to July 1, 2020, Margolis caused a new entity to be formed named PRX Ventures, Inc. ("PRX Ventures").  Upon information and belief, Margolis transferred his ownership interest in PersonalRX (the business that was to be acquired by HTH) to PRX Ventures.  On July 1, 2020, Margolis offered HTH's creditors the option to convert a portion of the debt owed to them by HTH to an equity interest in PRX Ventures, provided that HTH's creditors agreed to "release PersonalRX, HTH and their respective directors and officers [i.e., Margolis] of any liability relating to the merger, the loans and the Notes." Margolis further indicated that "[o]ther debts assumed or paid by [PRX Ventures] will offset [PersonalRX's] loan balance to HTH."  A copy of Margolis' proposal is attached to the Catino Declaration as Exhibit G.

**The State Court Action**

On July 1, 2020, Whealthcare and Dr. Malya, along with several noteholders (collectively, the "Plaintiffs"), filed an action against HTH for breach of the Notes in the Superior Court of New Jersey, Bergen County, Law Division captioned *Malya, et al. v. Health Tech Harbor, Inc.*, No. BER-L-003978-20 (the "State Court Action").  Shortly after filing the State Court Action, certain of the Plaintiffs recognized that a judgment against HTH would be of limited benefit if HTH had not demanded payment of the amounts owed to it by PersonalRX and BenAdvance and otherwise had no assets to pay their claims.  The Plaintiffs were also concerned that Margolis remained in control of HTH and PersonalRX and could take actions that would

10

impede the Plaintiffs' ability to recover on their notes (such as "setting off" amounts owed by PersonalRX to HTH or converting PersonalRX's debt to HTH to long term debt or equity). The Plaintiffs further recognized that the appointment of a receiver could take many months to accomplish. Finally, the Plaintiffs were concerned that a recovery on their note obligations could result in unequal recoveries for similarly situated creditors (which would be inconsistent with the *pari passu* provisions of their respective notes). After further consideration, a determination was made by certain of the Plaintiffs to file the Involuntary Petition, even though by doing so they would stay the State Court Action.

**The Petitioning Creditors Seek Payment of Their Notes**

PersonalRX and BenAdvance have notified HTH's creditors that the proposed merger transaction has been terminated. Having duped HTH's creditors into loaning HTH millions of dollars to consummate the merger transaction, Margolis now argues that HTH's creditors are acting in "bad faith" because they want to be paid the amounts they loaned to HTH. To be clear, the Petitioning Creditors are not trying to "salvage" the now-dead merger transaction or gain some type of advantage in non-existent negotiations. The Petitioning Creditors want to be paid the amounts owed to them by HTH and believe that the bankruptcy process will maximize their ability to recover on their claims. To that end, the Petitioning Creditors filed the Involuntary Petition and seek appointment of a chapter 7 trustee for the following reasons:

- to obtain full disclosure of HTH's assets;

- to investigate and, if appropriate, prosecute claims that the bankruptcy estate may have against third parties, including, without limitation, claims for breach of contract, breach of fiduciary duty, securities laws violations, and fraud;

- to avoid and recover any fraudulent and/or preferential transfers;

11

- to demand and, if necessary, enforce payment of PersonalRX's and BenAdvance's note obligations to HTH;

- to stay Margolis/PersonalRX and Milone/BenAdvance from setting off any amounts owed to HTH and to prevent Margolis/PersonalRX and Milone/BenAdvance from converting PersonalRX's and BenAdvances's current debt obligations to HTH to long term debt or equity; and

- to ensure the orderly and equal distribution of any recoveries among HTH's creditors.

**Petitioning Creditors**

As set forth below, the Petitioning Creditors loaned various amounts to HTH.

*Annette Catino*

Ms. Catino is the holder of Tranche A Note CPN-2017-1 in the principal amount of $150,000 (the "Catino Note"). Ms. Catino purchased the Catino Note pursuant to a Convertible Promissory Note Purchase Agreement dated November 28, 2017.

The Catino Note is presently due and payable in full. A demand for immediate payment of the Catino Note was made on July 24. To date, HTH has failed to pay the amounts due under the Catino Note.

In 2017, Margolis and Milone asked Ms. Catino to serve as one of HTH's directors after HTH acquired the business operations of PersonalRX and BenAdvance. In the spring of 2018, Ms. Catino declined the offer.

*Ramachandra Malya*

Dr. Malya is the holder of the following Notes issued by HTH in the aggregate principal amount of $505,000: CPN-2017-4, CPN-Q4-18-5, CPN-Q4-18-6, CPN-Q2-2019-2 and CPN-Q2-

12

2019-16 (the "Malya Notes"). Dr. Malya purchased the Malya Notes pursuant to Convertible Promissory Note Purchase Agreements dated November 28, 2017, October 5, 2018 and March 20, 2019.

The Malya Notes are presently due and payable in full. Demands for the immediate payment of the Malya Notes were made on June 3, 2020 and July 24, 2020. To date, HTH has failed to pay the amounts due under the Malya Notes.

*Whealthcare*

Whealthcare is the holder of notes issued by HTH totaling in aggregate $3,500,000 (the "Whealthcare Notes"). Whealthcare purchased the Whealthcare Notes pursuant to a Convertible Promissory Note Purchase Agreement dated as of April 19, 2018.

The Whealthcare Notes are presently due and payable in full. A demand for payment of the Whealthcare Notes was made on June 3, 2020. To date, HTH has failed to pay the amounts due under the Whealthcare Notes.

*John Lloyd*

Mr. Lloyd is the holder of notes CPN-2018-6 and CPN-Q2-2019-3 issued by HTH on September 18, 2018 and April 2, 2019, respectively, in the aggregate principal amount of $250,000 (the "Lloyd Notes"). Mr. Lloyd purchased the Lloyd Notes pursuant to certain Convertible Promissory Note Purchase Agreements dated July 27, 2018 and March 20, 2019.

The Lloyd Notes are presently due and payable in full. A demand for the immediate payment of the CPN-Q2-2019-3 Lloyd Note was made on July 24, 2020. To date, HTH has failed to pay the amounts due under the Lloyd Notes.

ME1 34253702v.1

Although Mr. Lloyd was asked to serve on the board of HTH after its acquisition of PersonalRX and BenAdvance, that transaction was never consummated, and Mr. Lloyd never accepted such a role.

***Joining Petitioning Creditors***

Since the Involuntary Petition was filed on July 29, 2020, an additional 15 creditors have joined in support of the Involuntary Petition (the "Joining Creditors"). [Docket Nos. 14-23, 27-28, 32.]

| Joining Creditor | Aggregate Principal of Notes |
|---|---|
| Mohammed Ahmed | $50,000 |
| Madhavi and Ravi Chenna | $75,000 |
| Sanjaykumar R. Kamani | $185,000 |
| Vijay Koka | $75,000 |
| Umesh Kumar | $150,000 |
| Doraraju Kurusamy | $150,000 |
| Krishnan Murthi Kurusamy | $45,000 |
| Lily Y. Loh | $50,000 |
| Kavita Majithia | $200,000 |
| Manmath Panda | $125,000 |
| Aashish Pandya | $60,000 |
| Devesh Pandya | $60,000 |
| Vishal Patel | $500,000 |
| P.H. Vanodia | $25,000 |

14

None of the Joining Creditors are shareholders of HTH, PersonalRX or BenAdvance. Moreover, none of the Joining Creditors were involved in any discussions or negotiations regarding the HTH's acquisition of PersonalRX and BenAdvance. The Joining Creditors joined the Petition because they believe the appointment of a chapter 7 trustee of HTH will help maximize the amount that they will be able to recover under their respective notes.

## **LEGAL ARGUMENT**

**I.    IT IS UNDISPUTED THAT THE REQUIREMENTS OF SECTION 303 HAVE BEEN SATISFIED**

Section 303(b)(1) lists three statutory requirements that must be satisfied in commencing an involuntary petition under Chapter 7 against a debtor that has twelve or more creditors: "(1) there must be three or more petitioning creditors; (2) each petitioning creditor must hold a claim against the debtor that is not contingent as to liability or the subject of a bona fide dispute; and (3) the claims must aggregate at least [$16,750] more than the value of liens on the debtor's property." *In re Forever Green Athletic Fields, Inc.*, 804 F.3d 328, 333 (3d Cir. 2015).

The Petitioning Creditors consist of 19 creditors of HTH. It is undisputed that each of the Petitioning Creditors holds a claim against HTH that is not contingent as to liability and is not subject to bona fide dispute. It is also undisputed that the claims of the Petitioning Creditors exceed, in the aggregate, $16,750 and are not secured by any liens. It is also undisputed that HTH is not paying its debts as they become due. Based upon the undisputed facts, this Court should determine that the Petitioning Creditors have satisfied the statutory requirements for entry of an order for relief pursuant to 11 U.S.C. §§ 303(b)(1) and (h)(1).

ME1 34253702v.1

## II.    THE COURT SHOULD DENY HTH'S MOTION TO DISMISS BECAUSE THE INVOLUNTARY PETITION WAS FILED IN GOOD FAITH

HTH does not dispute that the Petitioning Creditors have satisfied the statutory prerequisites for entry of an order for relief.  Rather, HTH relies on the Third Circuit decision in *Forever Green* to contend that, notwithstanding satisfaction of the statutory requirements, the Involuntary Petition should be dismissed because the Petitioning Creditors filed the Involuntary Petition in bad faith.

The good faith requirement is a recognition that "[t]he filing of an involuntary petition is an extreme remedy with serious consequences to the alleged debtor, such as loss of credit standing, inability to transfer assets and carry on business affairs, and public embarrassment." *In re Forever Green Athletic Fields, Inc.*, 804 F.3d at 335.  HTH does not assert that ***HTH*** will suffer any serious consequences from the Involuntary Petition, nor could such an assertion be made given that HTH purportedly has no assets or business operations.  Rather, HTH's concern appears to be focused on the consequences the Involuntary Petition may have on PersonalRX and BenAdvance.

As the Third Circuit has recognized, petitioning creditors are entitled to presumption that they have acted in good faith in filing an involuntary petition.  *In re Forever Green Athletic Fields, Inc.*, 804 F.3d at 335 ("[i]n terms of allocating burdens of proof, creditors are presumed to have acted in good faith"); *see also In re Metrogate, LLC*, No. 15-12593, 2016 WL 3150177, at *12 (Bankr. D. Del. May 26, 2016).  Accordingly, "[t]o dismiss the petition, the debtor must show by a preponderance of the evidence that the creditors acted in bad faith." *In re Forever Green Athletic Fields, Inc.*, 804 F.3d at 335.

ME1 34253702v.1

In deciding whether an involuntary petition is filed in bad faith, the Third Circuit has directed courts to consider the "totality of the circumstances." *Id.* at 336 (internal quotation marks omitted).  Factors a court may examine include whether:

> the creditors satisfied the statutory criteria for filing the petition; the involuntary petition was meritorious; the creditors made a reasonable inquiry into the relevant facts and pertinent law before filing; there was evidence of preferential payments to certain creditors or of dissipation of the debtor's assets; the filing was motivated by ill will or a desire to harass; the petitioning creditors used the filing to obtain a disproportionate advantage for themselves rather than to protect against other creditors doing the same; the filing was used as a tactical advantage in pending actions; the filing was used as a substitute for customary debt-collection procedures; and the filing had suspicious timing.

*Id.*  As set forth below, HTH has failed to carry its burden to prove by a preponderance of the evidence that Petitioning Creditors filed the Involuntary Petition in bad faith.

In its Memorandum of Law In Support of Alleged Debtor's Motion to Dismiss the Involuntary Petition dated August 20, 2020 [Docket No. 10-2] (the "HTH Memo"), Margolis/HTH asserts that "this matter at its core remains a dispute between PersonalRX and BenAdvance over the failed merger efforts."  HTH Memo, p. 17.  While HTH would like to portray this matter as a dispute between PersonalRX and BenAdvance and contends that the Petitioning Creditors are acting as "BenAdvance's surrogate," HTH ignores that HTH's creditors risk the loss of the $10 million they loaned to HTH because of the decisions made by PersonalRX and BenAdvance.  Regardless of what party is to blame for the failed merger efforts, this matter is, at its core, about HTH's creditors being repaid the amounts they loaned to HTH.[3]

HTH's arguments are nothing more than nonsensical, conclusory statements of law.  In the HTH Memo, HTH argues that the Petitioning Creditors filed the Involuntary Petition to "gain

---

[3] HTH asserts that the involuntary petition should be dismissed because "the parties should be directed to pursue non-binding mediation and/or arbitration in accordance with the dispute resolution provision of the [December 2019 MOU]."  HTH Memo, p. 20.  HTH ignores that HTH's creditors are not parties to the December 2019 MOU.

17

a tactical advantage in negotiations to salvage the merger." HTH Memo, pp. 1 and 17. HTH

fails to identify what purported "tactical advantage" HTH's creditors have gained by filing the

Involuntary Petition. Moreover, the Petitioning Creditors are not in any negotiations to "salvage

the merger." The decision to merge or not merge was a decision controlled by HTH/PersonalRX

and BenAdvance, not the Petitioning Creditors. As set forth above, HTH/PersonalRX and

BenAdvance have now (after obtaining $10 million of loans through HTH to consummate the

merger) notified HTH's creditors that they have no intention of merging (ignoring the $10

million problem that has created for HTH's creditors). HTH's creditors did not file the

Involuntary Petition to gain some unidentifiable "tactical advantage" in non-existent

"negotiations" to salvage a now-dead merger. HTH's creditors filed the Involuntary Petition

because they believe the chapter 7 bankruptcy process will be the most efficient and effective

means to maximize the recoveries on their claims against HTH.

In a similarly nonsensical and conclusory fashion, HTH argues that the Petitioning

Creditors filed the Involuntary Petition to "gain superior economic terms than the investors

would have realized if the merger had been consummated…." HTH Memo, pp. 1 and 17-18.

HTH fails to explain how the filing of the Involuntary Petition would enable the Petitioning

Creditors to "gain superior economic terms" than they would have realized had the merger been

consummated. HTH's creditors are seeking payment of the loans they made to HTH. If the

merger had been consummated, HTH's creditors would be entitled to payment of the loans they

made to HTH. Given that HTH's creditors have been left with claims against a shell company

"with no assets or ability to repay their debts," it is difficult to understand how a chapter 7

bankruptcy proceeding of HTH will provide HTH's creditors with greater economic terms than

would have been realized if the merger had been consummated. *See In re Diloreto*, 388 B.R.

18

637, 651 (Bankr. E.D. Pa. 2008) (finding that a judgment creditor filing an involuntary chapter 11 petition would not receive a measurable advantage over debtor's other unsecured creditors), *aff'd*, 442 B.R. 373 (E.D. Pa. 2010).[4]  Indeed, the fact that HTH—as it willingly avers—is insolvent and incapable of achieving its business objectives only amplifies that the Involuntary Petition has a valid bankruptcy purpose and was not filed to obtain a tactical advantage.  *See In re Square at Falling Run, LLC*, 472 B.R. 337, 345 (Bankr. N.D.W. Va. 2012) (concluding that an involuntary Chapter 7 petition had a valid purpose because the debtor was insolvent and could not carry on business and any value left in the debtor could only be salvaged in bankruptcy).

HTH further argues that the Petitioning Creditors filed the Involuntary Petition to "gain superior economic terms…than the investors would realize based on PersonalRX's current proposal."  HTH Memo, pp. 1 and 17-18.  PersonalRX's "current proposal" appears to be set forth on page 12 of the HTH Memo and states that HTH's creditors could convert their notes with HTH "into either equity in PersonalRX, a new term note with PersonalRX as obligor or a combination of the two."  (It is unclear whether PersonalRX's "current proposal" would also require the third party releases set forth in its July 1, 2020 proposal.)  HTH appears to contend that it is "bad faith" for the Petitioning Creditors to seek to maximize their recoveries against HTH through the bankruptcy process rather than accept a proposal from PersonalRX to convert their debt to equity in PersonalRX or a new term note from PersonalRX.  HTH cites no authority to support its proposition that a creditor may be forced to accept a proposed settlement of its claim by a third party rather than pursue its rights under the Bankruptcy Code.  Moreover, in light of PersonalRX's admitted inability to pay its debts and need for ongoing capital to fund its

---

[4] *See also In re Silverman*, 230 B.R. 46, 51 (Bankr. D.N.J. 1998) ("The improper use test questions whether the petitioning creditor used the involuntary bankruptcy process to obtain an improper advantage over other creditors rather than pursuing collection in the appropriate nonbankruptcy forum.").

ME1 34253702v.1

operations, HTH's creditors may reasonably conclude that the bankruptcy process presents a more viable alternative for recovering the amounts owed to them.

HTH further argues that "[f]iling an involuntary petition for the purpose of trying to coerce a settlement of the parties' disputes 'constitutes manifest bad faith" and cites *In re Anmuth Holdings LLC*, *In re Reveley*, and *In re Grossinger* in support of its argument.  HTH ignores the fact that amounts owed to HTH's creditors are not in dispute.  The Petitioning Creditors did not file the Involuntary Petition in an effort to "settle" disputed claims.  The Petitioning Creditors filed the Involuntary Petition to maximize their chances of recovering on their undisputed claims against HTH.  Further, unlike the facts of this case, each of the cases cited by HTH in support of its argument involved an involuntary petition that did not satisfy the requirements of Section 303(b)(1) of the Bankruptcy Code because one or more of the petitioning creditors held disputed claims.  The *Anmuth Holdings* and *Grossinger* cases both involved involuntary petitions that were filed by creditors with claims that were subject to a bona fide dispute.  *In re Anmuth Holdings LLC*, 600 B.R. 168, 176 (Bankr. E.D.N.Y. 2019) ("[T]he Petitioning Creditors conceded that their purported claims against the Alleged Debtors were subject to a bona fide dispute and that as such, they were ineligible to file the Involuntary Petitions."); *In re Grossinger*, 268 B.R. 386, 388-389 (Bankr. S.D.N.Y. 2001) ("The involuntary petition here was filed by one creditor with a $4,000 claim, less than half of the statutory minimum" and the claim "was obviously in dispute.").  The *Reveley* case involved an involuntary petition that was dismissed because one of the three petitioning creditors had a claim that was subject to a bona fide dispute.  *In re Reveley*, 148 B.R. 398, 400 (Bankr. S.D.N.Y. 1992).

ME1 34253702v.1

HTH also makes conclusory arguments that the Involuntary Petition was "motivated by ill will or a desire to harass…with the hopes of obtaining a disproportionate advantage" and asks the Court to recognize the "suspicious timing" of the involuntary filing.  HTH Memo, p. 18-19.  Although HTH uses the traditional "bad faith" buzzwords and catchphrases, HTH fails to identify any facts that would support such conclusions.  The Petitioning Creditors are motivated by a desire to be repaid the amounts they loaned to HTH.  No Petitioning Creditor is seeking to obtain a disproportionate advantage over any other creditor.  And the timing of the Involuntary Petition is the result of the timing of the decisions made by HTH/PersonalRX and BenAdvance and the Petitioning Creditors' concerns about Margolis and Milone taking actions that could impair HTH's ability to recover on its claims against PersonalRX and BenAdvance.  It is well settled that "[f]iling bankruptcy while litigation is pending in another forum does not necessarily constitute bad faith." *In re Zaver*, 520 B.R. 159, 166 (Bankr. M.D. Pa. 2014).  Rather, "bad faith exists where the purpose of the bankruptcy filing is to defeat state court litigation without a reorganization purpose." *In re Myers*, 491 F.3d 120, 125 (3d Cir. 2007) (citation and internal quotation marks omitted).  In other words, "[t]he filing of an involuntary petition to circumvent an adverse decision in the state court, or to preempt an impending state court decision, or to stay a decision in the state court from taking effect, constitutes evidence of bad faith." *In re Anmuth Holdings LLC*, 600 B.R. 168, 192 (Bankr. E.D.N.Y. 2019); *see also In re Manno*, No. 08-15588, 2009 WL 236844, at *9 (Bankr. E.D. Pa. Jan. 30, 2009) ("As the Third Circuit implied in *Lilley* when it identified the timing of the petition and the debtor's motive in filing as relevant considerations, such conduct can represent an abuse of the bankruptcy system when the state court is ready to act.").[5]  Contrary to HTH's position, the timing of the Petition is completely

---

[5] *See, e.g.*, *In re CNG Foods LLC*, No. 16-43278, 2020 WL 4219679, at *13 (Bankr. E.D.N.Y. July 13, 2020) ("The

ME1 34253702v.1

rationale.  As HTH notes, the Petition "was filed within weeks of PersonalRX [sic] declaration that it was terminating the merger."  HTH Memo, p. 19.  At that point, it became clear to Petitioning Creditors that the best opportunity for HTH's creditors to maximize their chances of recovery would be through an involuntary bankruptcy proceeding.

HTH also argues that Mr. Lloyd did not make a reasonable inquiry into the relevant facts because he purportedly did not receive emails from Margolis regarding a proposal to move forward with BenAdvance.  HTH Memo, p. 18.  This argument is meritless.

To satisfy this criteria, "the petitioning creditors and their counsel must make a reasonable inquiry into the existence of the elements necessary for filing an involuntary petition."  *In re Reveley*, 148 B.R. 398, 408 (Bankr. S.D.N.Y. 1992).  "On this score, bad faith is measured by 'what the petitioning creditor knew or should have known' with respect to the petition's merit, and whether the petitioning creditor 'knowingly alleg[ed] false information' or displayed a 'reckless disregard of the truth.'"  *In re Anmuth Holdings LLC*, 600 B.R. 168, 197 (Bankr. E.D.N.Y. 2019) (quoting *In re Dino's, Inc.*, 183 B.R. 779, 783 (S.D. Ohio 1995)).

At bottom, HTH's argument that Mr. Lloyd did not make a sufficient inquiry is premised on his lack of awareness regarding his negotiation options to resolve his claims against HTH.  A failure to exercise one's negotiation options, however, does not constitute a failure to make a reasonable inquiry into the law and facts before filing an involuntary petition.  *See  In re Luxeyard, Inc.*, 556 B.R. 627, 644 (Bankr. D. Del. 2016) ("[T]he Court is not concerned with whether a petitioner exercised its negotiation options, but whether it 'made a reasonable inquiry

---

combination of Feerst's belief that the Petition would halt the Contempt Hearing, and the timing of the filing clearly reveals that the Petitioning Creditors filed the Petition to gain a 'disproportionate advantage' against CNG and preempt or stay the Contempt Hearing."); *In re Tippett*, No. 08-00548-8, 2008 WL 2020348, at *2 (Bankr. E.D.N.C. May 8, 2008) ("That the bankruptcy petition was filed just two weeks prior to the trial of litigation that has been pending for nearly five and a half years is certainly suspicious.").

ME1 34253702v.1

into the relevant facts and pertinent law before filing.'" (quoting *In re Forever Green Athletic Fields, Inc.*, 804 F.3d at 336)).  Accordingly, the Court should reject HTH's claim that Mr. Lloyd failed to make a reasonable inquiry.

In fact, contrary to HTH's allegations, Petitioning Creditors did make a reasonable inquiry into the validity of the Involuntary Petition because—as HTH admits—they knew it was not paying its debts as they became due and that it was insolvent.  Thus, the Court should find that Petitioning Creditors did make a reasonable inquiry before filing the Involuntary Petition.

Based upon the totality of the circumstances, HTH has failed to submit sufficient evidence to rebut the presumption that the Petitioning Creditors acted in good faith in filing the Involuntary Petition.

## III.    THE JOINDER OF ADDITIONAL CREDITORS DEMONSTRATES THAT THE INVOLUNTARY PETITION WAS NOT FILED IN BAD FAITH AND CONSTITUTES COLLECTIVE CREDITOR ACTION

HTH contends that the joinder of additional creditors to the Involuntary Petition is not relevant because "the addition of other HTH investors to the involuntary petition cannot cure the bad faith surrounding its filing."  HTH Memo, p. 20.  However, it is well-settled law that the joinder of additional good-faith creditors can cure any issue of bad faith as it relates to one or more of the original petitioning creditors.  *See, e.g.*, *Fetner v. Haggerty*, 99 F.3d 1180, 1181 (D.C. Cir. 1996) ("We disagree that a bad faith petition bars the joinder of valid claims."); *In re On-Site Fuel Serv., Inc.*, No. 18-04196, 2019 WL 409422, at *4 (Bankr. S.D. Miss. Jan. 30, 2019) ("The plain language of section 303(c) simply does not condition joinder on the good faith of the original petitioning creditors." (citation and internal quotation marks omitted)); *In re Hrobuchak*, No. 14-02098, 2015 WL 1651074, at *1 (Bankr. M.D. Pa. Apr. 8, 2015) (finding that joinder of a creditor could cure a bad faith filing); *In re Houston Reg'l Sports Network, L.P.*, 505 B.R. 468,

477 (Bankr. S.D. Tex. 2014) (holding that three additional creditors' joinders were not filed in bad faith because they were not tainted with the allegations of the bad faith filers); *In re FKF Madison Park Grp. Owner, LLC*, 435 B.R. 906, 908 (Bankr. D. Del. 2010) ("The plain language of section 303(c) simply does not condition joinder on the good faith of the original petitioning creditors."). Indeed, application of the "bar to joinder" rule and dismissal of a bad faith petition "would merely postpone the inevitable in an area where time is of the essence" because other good-faith creditors would file their own petition soon thereafter. *Fetner*, 99 F.3d at 1181.

Based upon this well-settled law, the Court should consider the good faith of all of the Petitioning Creditors in deciding whether to enter an order for relief.

## IV. THE COURT SHOULD NOT ENTER A SCHEDULING ORDER AND PROMPTLY ENTER AN ORDER FOR RELIEF

As the foregoing demonstrates, HTH's arguments that the Involuntary Petition should be dismissed on the ground that it was filed in bad faith lack any foundation in fact or law. Furthermore, HTH does not deny that Petitioning Creditors have satisfied the statutory requirements of Sections 303(b)(1) and (h)(1) for entry of an order for relief. As set forth herein, the undisputed facts of this case justify the entry of an order for relief. HTH has not submitted any facts that would be sufficient to rebut the presumption of the Petitioning Creditors' good faith. Finally, to the extent that disputed facts exist as to whether PersonalRX or BenAdvance is responsible for the failed merger transaction, those facts are not material to relief sought by HTH's creditors against HTH. Additional discovery on that issue will not change the undisputed, material facts. Thus, the Court should deny HTH's request for further discovery and promptly enter an order for relief.

24

## <u>CONCLUSION</u>

For the foregoing reasons, the Petitioning Creditors respectfully request that the Court

deny HTH's motion to dismiss the Involuntary Petition and promptly enter an order for relief.

Dated:  September 15, 2020

**McCARTER & ENGLISH, LLP**

By:  */s/ Jeffrey T. Testa*
Jeffrey T. Testa, Esq.
Phillip S. Pavlick Esq.
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
Telephone:  (973) 622-4444
Facsimile:  (973) 624-7070
jtesta@mccarter.com
ppavlick@mccarter.com

and

Gregory J. Mascitti, Esq. (admitted *pro hac
vice*)
Worldwide Plaza
825 Eighth Avenue, 31st Floor
New York, New York 10019
Telephone: (212) 609-6800
Facsimile (212) 609-6921
gmascitti@mccarter.com

ME1 34253702v.1