CULLEN AND DYKMAN LLP
100 Quentin Roosevelt Blvd.
Garden City, New York 11530
(516) 357-3700
Matthew G. Roseman, Esq.
Bonnie L. Pollack, Esq

Attorneys for *Certain Petitioning Creditors*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 7 |
| HEALTH TECH HARBOR, INC., | Case No. 20-19017 (RG) |
| Alleged Debtor. | |

**DECLARATION IN OPPOSITION TO CROSS MOTION AND IN FURTHER**
**SUPPORT OF MOTION FOR IMMEDIATE ENTRY OF ORDER FOR RELIEF**

Bonnie Pollack, Esq., an attorney duly admitted to practice law before this Court in the above-captioned case, hereby declares under the penalty of perjury as follows:

1. I am a partner of Cullen and Dykman LLP, counsel to certain of the Petitioning Creditors in the above-captioned case. I make this Declaration in Opposition to the Cross-Motion ("Cross-Motion") filed by Health Tech Harbor, Inc. (the "Debtor") to the Motion of the Petition Creditors for Immediate Entry of an Order for Relief (the "Motion").[1] I am fully familiar with the facts set forth herein.

2. The Cross-Motion is just the latest smokescreen put up by the Debtor and PRX to obstruct the production of information to the Petitioning Creditors which they believe will not

---

[1] All capitalized terms used but not otherwise defined herein shall have the meanings ascribed in the Motion.

only show that PRX cannot raise money and has no viable future, but that Margolis is using PRX as his personal piggy bank. Margolis knows it, PRX knows it, HTH knows it, and its counsel knows it. The performance of those parties in seemingly negotiating the original Stipulation in good faith is nothing but a canard. Neither HTH nor PRX had any intention of producing the documents requested by the Petitioning Creditors pursuant to the Stipulation and had no intention of allowing the OFR to be entered, whether before or on July 20, 2021. The Cross-Motion is just more smoke and mirrors to hide their true intentions, something that the Debtor, PRX and Margolis (collectively, the "Debtor Parties") have become expert at. It is long on innuendo and supposition, and short on any actual evidence of bad faith on the part of the Petitioning Creditors. The truth of the matter is that the Debtor Parties defaulted in responding to the reasonable requests of the Petitioning Creditors, and submitted a proposal incapable of being responded to by the Petitioning Creditors due to the dearth of financial information that accompanied it and which they have refused to provide. The lack of good faith here is solely on the part of the Debtor Parties and their attempts at reversing the roles is astounding.

A. <u>Defaults of the Debtor Parties</u>

3. Let's start with the defaults of HTH and PRX under the Stipulation. All that the Petitioning Creditors asked for in the Stipulation was transparency and all they got was obfuscation. To be clear, the Petitioning Creditors requested documents for a threefold purpose: to see how the millions of dollars that they loaned was spent, to ascertain the current status of the businesses of HTH and PRX, and to determine the viability of their future businesses and, thus, any resolution that may be negotiated. The requests were not overburdensome and were relatively standard "asks" in a case such as this. If the requests had been unreasonable, we can be

sure that there would have been a flurry of emails from counsel complaining of that fact. Yet, there were none.

4. As with any forensic analysis, there is fluidity in the documents and information that need to be reviewed. In fact, the original request clearly states that "As our analysis progresses, additional documents may be requested." As such, after the request on February 16, 2021, two (2) additional requests for three (3) total additional items were made- - one for credit card statements, and one for bank reconciliations and a mapping of the general ledgers to the financial statement, because the documents that had been provided did not properly tie into each other. *See*, Declaration of Maryann Veytsman, ¶9. None of this was unreasonable, nor was it beyond the scope of the Stipulation. In fact, there was no scope, other than that the Petitioning Creditors be "provide[d] full access to all financial records of [HTH and PRX's] respective companies." *See*, Stipulation, ¶5.

5. The response of the Debtor Parties, on the other hand, has been the very definition of slow-walking and anything but full access. Placing the blame on its lack of staffing holds no weight. It belies belief that a publicly traded company cannot respond to a simple document request, ***not in days, not even in weeks, but in months***! In ***four months***, the Debtor Parties still have not been able to produce all of the requested documents.

6. It is also incredible for the Debtor Parties to assert that it was overly oppressive to upload the requested documents, when they could easily have been uploaded by a few clicks of the mouse. In fact, when Citrin Cooperman ("Citrin"), the forensic accountant, was finally able to convince the Debtor Parties to just upload to a secure platform and walked Ms. Fine through the steps to do so, it took her less than two (2) hours to upload the thousands of pages of documents that she asserts she had to do by hand. *See*, Veytsman Decl., ¶6, 7. The Debtor Parties

also took unfounded positions in response to the requests. For example, they claimed that it did not have to provide bank statement reconciliations for certain time periods on the theory that there were no transactions during those periods, but the general ledgers showed transactions during those times. *See*, Veytsman Decl., ¶3.

7. Despite repeatedly stating that they had fully complied with the requests, the Debtor Parties often later uploaded numerous additional documents. *See*, Veytsman Decl., ¶9. In order to resolve the disconnect between the Debtor Parties asserting, on the one hand, compliance with the requests, and the Petitioning Creditors alleging the opposite, I suggested to Stolz on two (2) occasions that a call be scheduled with counsel, Citrin and Ms. Fine. *See*, Exhibit A. Those suggestions were ignored.

8. The Debtor Parties cannot with any credibility whatsoever establish that they have complied with the document production requirements of the Stipulation. We know it, they know it, and the Mediator knows it (notably, it took the Debtor Parties months to provide the Mediator with information that he requested as well).

9. Unable to mount any legitimate defense to the clear default, the Debtor Parties do what they have learned to do best - - throw a proverbial plate of spaghetti against the wall to see what sticks. Unfortunately for the Debtor Parties, all of that spaghetti landed with a thud on the floor. The Debtor Parties have two (2) theories as to why not only should the OFR not be entered immediately, but it should not be entered at all. The first is that the Petitioning Creditors have not negotiated an ultimate resolution with the Debtor Parties in good faith. The second is that the Petitioning Creditors somehow breached the Stipulation because unrelated people formed an unrelated company. Neither of these theories hold any water whatsoever.

**Good Faith Negotiations**

10. Initially, in a total non-sequitur, Stolz addresses a case before Judge Kaplan in which we both participated, and states that I expressed skepticism as to his client's ability to satisfy the debt to my client, and that his client succeeded in paying the debt. There is no good reason for Stolz to include that in his papers since it has absolutely nothing to do with this matter. Whatever his reasoning, he used a bad example since it was not his client that paid our client in that case, but non-debtor guarantors from sales of unrelated properties. In fact, if the guarantors had not made those payments, our client would still be waiting for their money, thus corroborating my instinctive reaction in that case.

11. In a similar vein, and apropos of nothing, Stolz remarks that the Petitioning Creditors "shot themselves in the foot" by damaging the company (referring to PRX) that they hope will repay the indebtedness, and that because of the involuntary filing, PRX lost funding momentum. This of course ignores the fact that the involuntary case was not filed against PRX, and had no effect on PRX funding. It was filed against HTH, an entity which had already rid itself of assets by funneling the lion's share of the monies loaned by the Petitioning Creditors to PRX. More smoke. More mirrors.

12. Turning to the merits of this argument, the fact that the Debtor Parties can even suggest that the Petitioning Creditors have not negotiated a resolution in good faith is hubris at its finest. On April 9, 2021, the Debtor Parties made a proposal for a stock-for-debt deal as it pertained to PRX (the "Proposal"). Although the Proposal contained a proposed valuation for the PRX stock, it contained no terms as to stock ownership at all. On April 15, 2021, the Petitioning Creditors rejected that Proposal because of the foregoing reasons (hence the use of the term "meaningless stock") and because they were not interested in participating as shareholders in a

Margolis-run company given their history with Margolis and their belief that Margolis defrauded them. The Petitioning Creditors did, however, express a willingness to entertain a discounted cash settlement at that time. ***The Debtor Parties never responded to the Petitioning Creditors' expression of interest as to negotiation of a discounted payout.*** As a result, and because of the defaults under the Stipulation as addressed in detail in the Motion an above, the Motion was filed on May 11, 2021.

13. At the time the Motion was filed, the Petitioning Creditors advised the Mediator that even though they filed the Motion, they would reconsider a stock-for-debt deal provided that the terms of that deal including the valuation of the stock and the terms of stock ownership were acceptable to them. In response, the Mediator suggested to the Debtor Parties that they revise the prior Proposal. In response, and through the Mediator, the Debtor Parties requested an adjournment of the Motion; the Petitioning Creditors agreed provided that they received a non-vague Proposal based on a reasonable valuation by Friday May 21, 2021. This interim resolution was supported by the Mediator and agreed to by the Debtor Parties.

14. On Friday May 21, 2021, the Petitioning Creditors received the revised Proposal and were advised that financial backup to the Proposal would be forthcoming by the following Monday, which was in fact received. Although the Petitioning Creditors considered the proposal to be one in good faith (a condition for the adjournment), they had numerous issues with the Proposal that needed to be addressed. As a result, on May 28, 2021, the Petitioning Creditors responded to the revised Proposal with certain concerns including without limitation the following:

- The valuation was believed to be significantly inflated and unable to be supported, so request was made to schedule a call with Hy Vaupen (the financial consultant used by the Debtor Parties) to address all issues and questions as to the valuation, and the Petitioning Creditors'' reserved the right to provide comments to the valuation after that discussion.

The veracity of the proposed valuation is demonstrated by the fact that, among other thigs, the projected revenue of PRX increased 2.75 times from 2020 to 2021, and ___ times from 2021 to 2022, without any basis whatsoever. *This discussion was never scheduled by the Debtor Parties. The Debtor Parties finally responded to this request TODAY, June 11, and provided that Mr. Vaupen would be available on Monday, June 14, although they would not provide any of the requested financial information in order to have that discussion, the day before the hearing on these motions. This is a transparent attempt at trying to overcome what is evident- their bad faith in the negotiations. This is further evidenced by the fact that upon learning that the hearing on the Motion and Cross-Motion would be a status conference initially, the Debtor Parties' response was that there was no need to rush to have the discussion before the hearing. They were only pushing to do so to make themselves look better in the eleventh hour.*

- The Petitioning Creditors took issue with the way the total debt was calculated (and therefore their ultimate percentage of stock), believed that the total debt upon which the percentage was based should exclude insider debt and requested a detailed breakdown of the debt so that they could provide further comment. *This was not received until two (2) days ago.*
- The proposal did not, and needed to, provide that any recoveries from BenAdvance and HAN Health Alliance be paid to the Petitioning Creditors. The Petitioning Creditors also conditioned an agreement on the lawsuit against BenAdvance being dismissed without prejudice to provide time for that obligation to also be resolved. Note, the Debtor Parties would have had the opportunity to recommence the lawsuit if resolution could not be reached.
- The Petitioning Creditors asked for a detailed breakdown of the proposed uses of the monies being raised by PRX and what would be accomplished with the monies included in the benchmark amounts in the Proposal, and once received, would further comment on the benchmark amounts. *This information was ever provided by the Debtor Parties.*
- The Petitioning Creditors raised concerns as to voting rights ad liquidation preference being proposed.
- The Petitioning Creditors raised issues with corporate governance going forward and requested independent seats on the PRX board and exclusion of Margolis or any person related to him from the board.
- Concerns were also expressed as to the marketing of PRX for sale if the benchmarks were not achieved and whether there should be additional benchmarks in the event that PRX could not be sold in the ordinary course.
- Since Margolis apparently owns the intellectual property upon which PRX operates, the Petitioning Creditors advised that any Proposal needed to provide that the intellectual property be sold with PRX in the event of a sale.
- Finally, any resolution was premised on the receipt by the Petitioning Creditors of the documents that still had not been provided as more fully set forth above.

15. If the Petitioning Creditors had not been negotiating the proposal in good faith, they would not have provided a thorough response geared toward an actual resolution. On June

1, 2021, Stolz requested answers to certain questions respecting the items raised in response to the Proposal, which were provided to him on the same day.

16. Two days later, on June 3, 2021, the Mediator asked if the Petitioning Creditors would attend an additional mediation session. The Mediator was advised, and upon information and belief he advised the Debtor Parties and agreed, that the documents requested as highlighted above and the discussion with Hy Vaupen needed to occur prior to any further mediation, without which we, and he, were unsure as to how any further mediation could proceed. Instead of responding to those reasonable requests, instead of scheduling the call with Hy Vaupen, and despite several emails and telephone calls from the undersigned to the Mediator inquiring as to the status, the Debtor Parties never responded and instead filed the Cross-Motion, giving the Petitioning Creditors three days to respond after having had the Motion for one month. The Court must ask who is not negotiating in good faith? The answer, clear as day, is the Debtor Parties.

17. The Debtor Parties further suggest that the Petitioning Creditors did not negotiate the Proposal in good faith because they agreed to similar terms with BenAdvance but refused to entertain the same proposal by the Debtor Parties. As set forth in the affidavit of Dr. Ramachandra Malya submitted herewith, the reason for the initial rejection of a stock-for-debt transaction with PRX is that the Petitioning Creditors do not trust Margolis and did not wish to be shareholders in a Margolis-run entity (the Petitioning Creditors do not have that same concern with respect to Milone and BenAdvance). Considering all that has transpired since the time that the Petitioning Creditors made their loans to HTH, it appears that they have good reason not to trust Margolis. The Petitioning Creditors did not blindly agree to take stock for debt from BenAdvance without any financial disclosures either. As set forth in the Malya Affidavit, Milone

has shared financial information with the Petitioning Creditors on a continual basis, including the valuation upon which that agreement was based, and fully answered all questions regarding such financial information. On the other hand, Margolis has done the opposite.

18. The good faith of the petitioning creditors in the negotiations with the Debtor Parties cannot be credibly contested, a fact which can be supported by the Mediator. It should be clear that the only party is not acting in good faith are the Debtor Parties. They delayed entry of the OFR for what was to be a short, six month period to accomplish what they could not do in the years prior to that period - - raise money. Having not been able to accomplish that, they now suggest that the entire process should start over, merely by throwing out aspersions and delusions. They delayed the hearing on the Motion with the promise of a proposal which, when received initially, was not even good enough for the Mediator, and it was the Mediator who sent them back to the drawing board, not the Petitioning Creditors. They are seeking to further delay the proceedings by requesting an evidentiary hearing, where none is warranted. The documents speak for themselves. Adjourning this matter only rewards the dilatory conduct of the Debtor Parties. It is time to officially start this bankruptcy case, without further unreasonable and unwarranted delay. Perhaps a trustee can obtain the information that the Petitioning Creditors have been seeking for months on end.

### WellClarity Rx

19. The Debtor Parties' position that somehow the Petitioning Creditors breached the Stipulation because they are allegedly participating in an entity which is allegedly competing with PRX is also absurd and solely intended to muddy the waters here. As set forth in the affidavits of Dr. Ramachandra Malya and Biagio Graffagnino ("Graffagnino") also submitted in connection herewith, the Debtor Parties' allegations with respect to WellClarity have not a

semblance of truth. Neither Dr. Malya nor any of the other Petitioning Creditors have any investment in or loans to WellClarity. He was not a party to the email communications, the "smoking gun", discussed in the Cross-Motion. As detailed in the Graffagnino Declaration, there is no foundation for the allegations that WellClarity and PRX even operate in the same business space or that Graffagnino does not have a legal right to operate that business.[2] This is nothing more than a red herring to take the attention away from the baseless opposition to the Motion, just more spaghetti thrown onto the wall but not sticking.

20.     The Debtor Parties further insinuate that somehow documents produced by them were passed along to WellClarity by Dr. Malya. As set forth in Dr. Malya's affidavit, he has not even received any information other than in connection with the Proposal, and did not provide that information or discuss it with anyone. Ms. Veytsman further confirms that none of the documents received by Citrin where provided to Dr. Malya. Another smokescreen.

**Failure to Satisfy Rule 60(b)**

21.     The Cross-Motion is based on Rule 60(b)(3) and (6) of the federal rules of Civil Procedure, which provides the Court may relieve a party from an Order for fraud, misrepresentation or misconduct of the opposing party, or for any other reason which justifies relief. Other than two case citations for generic propositions, the Debtor Parties have submitted absolutely no legal basis for its request in the Cross-Motion, this despite their acknowledgment that Rule 60(b) relief is extraordinary. There has been no evidence of fraud or misrepresentation whatsoever. The Cross-Motion is replete with implication, supposition and fancy. The allegations about bad faith negotiation by the Petitioning Creditors are specious, and even if the Debtor Parties could prove that WellClarity somehow amounts to fraud or misconduct, none of

---

[2] Whatever disputes PRX has with Graffagnino are between them, and have no place in the arguments between the Debtor Parties and the Petitioning Creditors. The Court should not be swayed by this side show.

the opposing parties the (Petitioning Creditors) are involved in that entity. The Debtor Parties cannot meet their burden of proof under Rule 60.³

22. For the reasons set forth herein, in the Affidavits and Affirmations filed in opposition to the Cross-Motion and in the Motion, the Cross-Motion should be denied in its entirety, and the Motion should be granted by the Court.

I hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: June 11, 2021



Bonnie Pollack

2019844v2

---

³ The Petitioning Creditors reserve the right to file additional |pleadings give the shortened notice upon which the Cross-Motion was made.

**EXHIBIT A**

**Pollack, Bonnie**

| | |
|---|---|
| **From:** | Pollack, Bonnie |
| **Sent:** | Sunday, June 6, 2021 1:48 PM |
| **To:** | Maria Sousa |
| **Cc:** | Daniel M. Stolz; larsm66@gmail.com; Joseph S. Aboyoun Esq. (jaboyoun@aboyoundobbs.com); gkinoian@gmail.com; mbauer@norris-law.com; Roseman, Matthew |
| **Subject:** | Re: DGN Pharmacy - HTH |

Dan- I have never received a response to this, and to set up a call. Please advise. Thank you.

**Bonnie Pollack**
Partner
**Cullen and Dykman LLP**
100 Quentin Roosevelt Boulevard
Garden City, New York 11530
T: 516.296.9143
E: bpollack@cullenllp.com

---

**From:** "Pollack, Bonnie" <bpollack@cullenllp.com>
**Date:** Tuesday, June 1, 2021 at 5:02 PM
**To:** Maria Sousa <MSousa@genovaburns.com>
**Cc:** "Daniel M. Stolz" <DStolz@genovaburns.com>, "larsm66@gmail.com" <larsm66@gmail.com>, "Joseph S. Aboyoun Esq. (jaboyoun@aboyoundobbs.com)" <jaboyoun@aboyoundobbs.com>, "gkinoian@gmail.com" <gkinoian@gmail.com>, "mbauer@norris-law.com" <mbauer@norris-law.com>, "Roseman, Matthew" <MRoseman@cullenllp.com>
**Subject:** Re: DGN Pharmacy - HTH

Dan- in furtherance of the below email, I am advised that with the exception of 1 bank statement uploaded on Friday, the list that I sent to you is accurate. There is obviously a disconnect in what you are being told. Please advise as to the days and times that you and someone from PRX are available for a call this week. Thank you.

**Bonnie Pollack**
Partner
**Cullen and Dykman LLP**
100 Quentin Roosevelt Boulevard
Garden City, New York 11530
T: 516.296.9143
E: bpollack@cullenllp.com

---

**From:** "Pollack, Bonnie" <bpollack@cullenllp.com>
**Date:** Tuesday, June 1, 2021 at 12:14 PM
**To:** Maria Sousa <MSousa@genovaburns.com>
**Cc:** "Daniel M. Stolz" <DStolz@genovaburns.com>, "larsm66@gmail.com" <larsm66@gmail.com>, "Joseph S.

1

Aboyoun Esq. (jaboyoun@aboyoundobbs.com)" <jaboyoun@aboyoundobbs.com>, "gkinoian@gmail.com" <gkinoian@gmail.com>, "mbauer@norris-law.com" <mbauer@norris-law.com>, "Roseman, Matthew" <MRoseman@cullenllp.com>
**Subject:** RE: DGN Pharmacy - HTH

Dan- the list that I provided was compiled on Thursday or Friday, so unless documents were produced between then and now, this is just inaccurate. Perhaps we need to have a call with you, me, Marianne from Citron and whoever at PRX is making the production to discuss this. Thank you.

**Bonnie Pollack**
Partner
**Cullen and Dykman LLP**
100 Quentin Roosevelt Boulevard
Garden City, New York 11530
T: 516.296.9143 | F: 516.357.3792
E: bpollack@cullenllp.com

ATTORNEY-CLIENT PRIVILEGED COMMUNICATION - DO NOT FORWARD OR COPY - CONFIDENTIALITY NOTICE: The contents of this e-mail message and any attachments are intended solely for the personal and confidential use of the recipient(s) named above. This communication is intended to be and to remain confidential and may be subject to applicable attorney/client and/or work product privileges. If you are not the intended recipient of this message, or if this message has been addressed to you in error, please immediately alert the sender by reply e-mail and then delete this message and its attachments.

**From:** Maria Sousa <MSousa@genovaburns.com>
**Sent:** Tuesday, June 1, 2021 10:47 AM
**To:** Pollack, Bonnie <bpollack@cullenllp.com>
**Cc:** Daniel M. Stolz <DStolz@genovaburns.com>; larsm66@gmail.com; Joseph S. Aboyoun Esq. (jaboyoun@aboyoundobbs.com) <jaboyoun@aboyoundobbs.com>; gkinoian@gmail.com; mbauer@norris-law.com
**Subject:** [EXTERNAL] DGN Pharmacy - HTH

See attached from Daniel Stolz.



Maria Sousa

Legal Assistant

110 Allen Rd., Suite 304, Basking Ridge, NJ 07920

Tel: 973.533.0777 Ext: 1130 | Fax: 973.467.8126

www.genovaburns.com

## Disclaimer

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by **Mimecast Ltd**, an innovator in Software as a Service (SaaS) for business. Providing a **safer** and **more useful** place for your human generated data. Specializing in; Security, archiving and compliance. To find out more Click Here.

2



Genova Burns LLC
110 Allen Rd., Ste. 304
Basking Ridge, NJ 07920
Tel: 973.467.2700  Fax: 973.467.8126
Web: www.genovaburns.com

**Daniel M. Stolz, Esq.**
Partner
Member of the NJ Bar
dstolz@genovaburns.com
Direct: 973-230-2095

June 1, 2021

Bonnie Pollack, Esq. (BPollack@cullenllp.com)
Cullen and Dykman LLP
100 Quentin Roosevelt Boulevard
Garden City, NY 11530

      Re:    **DGN Pharmacy d/b/a PersonalRX/HTH**
              **File No. 24624**

Dear Bonnie:

I am advised by my client that all of the information requested under your February 16th letter has been produced with the exception of a couple of bank statements from Chase, which my client is still seeking.

Please confer with Citron and confirm that the foregoing is accurate.

Thank you in advance for your prompt attention to this matter.

                    Very truly yours,

                    **GENOVA BURNS, LLC.**

                  **DANIEL M. STOLZ**

DMS:ms

    cc: Lawrence Margolis (larsm66@gmail.com)
    cc: Joseph Aboyoun, Esq. (jaboyoun@aboyoundobbs.com)
    cc: Gregory S. Kinoian, Esq. (gkinoian@gmail.com)
    cc: Morris Bauer, Esq. (mbauer@norris-law.com)

Newark, NJ • New York, NY • Camden, NJ • Tinton Falls, NJ • Philadelphia, PA • Jersey City, NJ • Basking Ridge, NJ