UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
**Caption in Compliance with D.N.J. LBR 9004-1**

**LOWENSTEIN SANDLER LLP**
Joseph J. DiPasquale, Esq.
Arielle B. Adler, Esq.
One Lowenstein Drive
Roseland, New Jersey 07068
Telephone: (973) 597-2500
Facsimile: (973) 597-2400

**HARRINGTON OCKO MONK, LLP**
Kevin J. Harrington, Esq. (*pro hac vice*)
81 Main Street, Suite 215
White Plains, NY 10601
(914) 686-4800 (Telephone)
(914) 686-4824 (Facsimile)

*Co-Counsel to Han Benefit Advantage, Inc.*

In re:

HEALTH TECH HARBOR, INC.,

                                    Debtor.

Chapter 7

Case No. 20-19017 (RG)

Hearing Date: June 15, 2021, 11:00 a.m.

**DECLARATION OF BIAGIO GRAFFAGNINO IN (I) SUPPORT OF APPLICATION
FOR IMMEDIATE ENTRY OF ORDER FOR RELIEF, AND (II) OPPOSITION TO
ALLEGED DEBTOR'S CROSS-MOTION FOR RELIEF FROM THAT CERTAIN
CONSENT ORDER APPROVING STIPULATION RESOLVING MOTION TO DISMISS
INVOLUNTARY PETITION (DKT. 68)
AND FOR CERTAIN OTHER RELATED RELIEF**

BIAGIO GRAFFAGNINO, under penalty of perjury, hereby states and declares the

following:

1.    I am the principal of a recently formed company known as WellClarity, Inc.

2.    In that capacity I have been asked to review a Declaration of Lawrence Margolis,

dated June 8, 2021 ("Margolis Declaration"), filed in this bankruptcy proceeding in the District of

New Jersey involving Health Tech Harbor, Inc. under Case No. 20-19017 (RG).  I have been

requested to review the Margolis Declaration because it includes in it allegations concerning my company WellClarity, Inc. ("WellClarity").

3.      Many of the allegations made about WellClarity, Inc. are false. It is my purpose in submitting this Declaration to provide the true facts concerning my company.

4.      I formed WellClarity on April 23, 2021 by filing a Certificate of Incorporation with the Secretary of State of the State of Delaware on such date. A copy of this Certificate of Incorporation is annexed hereto as Exhibit A. I subsequently caused the Certificate of Incorporation to be corrected, which I did by filing a Certificate of Correction on May 6, 2021. A copy of this Certificate of Correction is annexed hereto as Exhibit B.

5.      As of this time, WellClarity has not commenced business operations. The company has not generated a single penny of revenue to date. The company's business is in its formative stage.

6.      WellClarity did cause its attorney to file for trademark protection for three different trademarks which it is potentially going to use in connection with its business. Those marks are WellClarity, WellClarity Solutions, and WellClarity Rx.

7.      No final decision has been made to use either WellClarity Solutions or WellClarity Rx. However, I felt it was a good business decision to reserve those names since they may have use for the company in the future.

8.      The Margolis Declaration makes allegations that Dr. Ramachandra Malya and perhaps other Petitioning Creditors involved in this bankruptcy case are investors or employed by WellClarity.

9.      Those allegations are incorrect. None of the Petitioning Creditors in the HTH bankruptcy case are investors in WellClarity or employees of WellClarity. In fact, I am the sole

shareholder in WellClarity and have not issued any stock to any other parties. The company remains one hundred percent owned by me.

10.    Dr. Malya has not invested any money either as a loan or equity investment, and holds no position with my company.

11.    It has been further alleged that Dr. Malya received confidential information about Mr. Margolis' company Personal Rx ("PRx") from his participation in this bankruptcy case, and he implies that such information was provided to me in connection with the business affairs of WellClarity.

12.    These allegations are entirely false. I received no such confidential information from Dr. Malya concerning Personal Rx.

13.    Furthermore, information concerning Personal Rx has played no role whatsoever in the formation of my company and the business plan which my company intends to pursue.

14.    The Margolis Declaration alleges that WellClarity is a direct competitor with Personal Rx. This is completely untrue.

15.    I worked for Personal Rx from January 2, 2019 until September 21, 2020.

16.    Personal Rx operates a retail mail-order pharmacy business, which is licensed to dispense prescribed medications in multiple states throughout the United States. The medications are dispensed in adherence packaging which is designed to increase patient adherence with the various medications prescribed for each particular patient. The target customer of this pharmacy are persons with multiple prescriptions.

17.    In contrast, WellClarity is not a pharmacy at all and does not sell or dispense prescription medications. The service we intend to provide is patient advocate service to mostly

3

low income and indigent persons to assist them to qualify for private and philanthropic programs which subsidize needed high cost medications.

18.    Plain and simple, Personal Rx's business model is not similar to WellClarity's. WellClarity is a patient advocate service program and not a pharmacy.

19.    The Margolis Declaration next criticized WellClarity because it is planning to conduct business with a pharmacy benefits manager known as Pillow PH.  Pillow PH is a company that I knew through contacts which I had in the healthcare industry.  During the time of my employment at PRx, I introduced Pillow PH to Personal Rx and Mr. Margolis.  After I made that introduction, it is my recollection that Personal Rx and Pillow PH both signed a Pharmacy Services Agreement which is a standard form of agreement offering that Personal Rx would provide its "extra care" program to patients referred by Pillow PH.  This extra care program is offered to patients who take a minimum of five medications per day for chronic illness and it offers to provide high level personal services to such patients to produce better health outcomes.  Although Pillow PH apparently signed an agreement with Personal Rx some time ago, I am not aware of Personal Rx generating any business or revenue to date from the Pillow PH contract.

20.    WellClarity has every right to conduct business with Pillow PH or any other client, whether or not some such entity or entities are customers or potential customers of Personal Rx.

21.    I do not have a non-compete agreement with Personal Rx.  Indeed, my Employment Agreement with Personal Rx makes it explicitly clear that I am free to do business with any entity that I introduced to Personal Rx or who does business with Personal Rx, with no restrictions on either their doing business or on my solicitation of that business.  A copy of my Employment Agreement is annexed hereto as Exhibit C.

22.    Several provisions of my Employment Agreement with Personal Rx make this point very clearly and directly, as follows:

4

"1.    **Proprietary Information**.
… Notwithstanding the above, Mr. Graffagnino may continue to do business with customers, whether individuals, partnerships, entities, or corporations with whom he has previously done business or direct or indirect relationship …

4.    **Avoidance of Conflict of Interest**. While a Service Provider of the Company, I may engage in any other business activity that conflicts with my duties to the Company.  I am not required to advise the president of the Company or his or her nominee at such time as any activity of either the Company or another business presents me with a conflict of interest or the appearance of a conflict of interest as Service Provider of the Company.

5.    **Developments**.  I am not  required to make full and prompt disclosures to the Company of all inventions, discoveries, designs, developments,   methods,   modifications,   improvements,   processes, algorithms, databases, computer programs, formulae, techniques, trade secrets, graphics or images, and audio or visual works and other works of authorship (collectively "Developments"), whether or not patentable or copyrightable, that are created, made, conceived or reduced or practice by me (alone or jointly with others) or under my direction during the period of my Service Relationship.  I acknowledge that all work performed by me is not on a "work for hire" basis, and I hereby do not assign and transfer and, to any such assignment …

8.    **Non-Competition and Non-Solicitation**
Parties agree that this agreement does not restrict the employee to solicit clients, groups, entities, individuals, and partnerships or any of his relationships."

23.    The facts are that WellClarity has nothing whatsoever to do with Personal Rx, and

that no confidential information has been provided to me or to my company, which relates in any

way to Personal Rx; nor has WellClarity used information relating to Personal Rx for any purposes.

I hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: June 11, 2021

_____
Biagio Graffagnino

**EXHIBIT A**

State of Delaware
Secretary of State
Division of Corporations
Delivered 01:33 PM 04/23/2021
FILED 01:33 PM 04/23/2021
SR 20211426400 - File Number 5866019

# CERTIFICATE OF INCORPORATION
## OF
## WELL CLARITY, INC.

The undersigned, desiring to form a corporation for profit under the General Corporation Law of Delaware (the "General Corporation Law"), does hereby certify:

**First:**        The name of the corporation is Well Clarity, Inc. (the "Corporation").

**Second:**        The registered office of the Corporation in the State of Delaware is located at 1013 Centre Road, Suite 403-B, City of Wilmington, County of New Castle, Zip Code 19805. The registered agent in charge thereof is VCorp Services, LLC.

**Third:**        The purpose of the Corporation is to engage in any lawful act or activity for which corporations may be organized under the General Corporation Law.

**Fourth:**        The total number of shares of stock that the Corporation is authorized to issue is 10,000,000 shares of common stock with a par value of $.0001 per share, consisting of 8,000,000 shares of Class A Voting Common Stock, $0.0001 par value per share ("Class A Common Stock"), and 2,000,000 shares of Class B Non-Voting Common Stock, $0.0001 par value per share ("Class B Common Stock"). Shares of Class A Common Stock and Class B Common Stock shall rank equally (as to dividends and distributions, and upon any liquidation, dissolution or winding up of the Corporation), and share ratably and be identical in all respects and as to all matters with regard to financial matters, except that Class B Common Stock shall have no voting rights.

**Fifth:**        The name and mailing address of the incorporator are as follows: Biagio Graffagnino, 155-21 Bridgeton Street, Howard Beach NY 11414.

**Sixth:**

        A.        **Limitations.** To the fullest extent permitted by law, a director of the Corporation shall not be personally liable to the Corporation or its stockholders for monetary damages for breach of fiduciary duty as a director. If the General Corporation Law or any other law of the State of Delaware is amended after approval by the stockholders of this Paragraph Sixth to authorize corporate action further eliminating or limiting the personal liability of directors, then the liability of a director of the Corporation shall be eliminated or limited to the fullest extent permitted by the General Corporation Law as so amended. Any repeal or modification of the foregoing provisions of this Paragraph Sixth by the stockholders of the Corporation shall not adversely affect any right or protection of a director of the Corporation existing at the time of, or increase the liability of any director of the Corporation with respect to any acts or omissions of such director occurring prior to, such repeal or modification.

        B.        **Indemnification.** To the fullest extent permitted by applicable law, the Corporation is authorized to provide indemnification of (and advancement of expenses to) directors, officers and agents of the Corporation (and any other persons to which the General Corporation Law permits the Corporation to provide indemnification) through Bylaw provisions, agreements with such agents or other persons, vote of stockholders or disinterested directors or otherwise, in excess of the indemnification and advancement otherwise permitted by Section 145 of the General Corporation Law.

        C.        **Modification.** Any amendment, repeal or modification of the foregoing provisions of this Paragraph Sixth shall not adversely affect any right or protection of any director, officer or other agent of the Corporation existing at the time of such amendment, repeal or modification.

**Seventh**:        No stockholder of the Corporation shall have a right to purchase shares of capital stock of the Corporation sold or issued by the Corporation except to the extent that such a right may from time to time be set forth in a written agreement between the Corporation and any such stockholder.

**Eighth**:        In furtherance and not in limitation of the powers conferred by statutes, the Board of Directors is expressly authorize to make, repeal, alter, amend and rescind any or all of the Bylaws of this Corporation.

**Ninth**:        The Corporation hereby elects not to be governed by Section 203 of the General Corporation Law.

**Tenth**:        The Corporation is to have perpetual existence.

IN WITNESS WHEREOF, the undersigned, being the incorporator of the Corporation, has executed signed and acknowledged this Certificate of Incorporation on April ⎯Z⎯|⎯ , 2021.

Biagio Graffagnino, Incorporator

**EXHIBIT B**

## STATE OF DELAWARE
## CERTIFICATE OF CORRECTION

Well Clarity, Inc. _____, a
corporation organized and existing under and by virtue of the General Corporation Law of
the State of Delaware.

**DOES HEREBY CERTIFY**:

1. The name of the corporation is Well Clarity, Inc. _____.
2. That a Certificate of of Incorporation _____
   (Title of Certificate Being Corrected)
   was filed by the Secretary of State of Delaware on April 23, 2021 _____
   and that said Certificate requires correction as permitted by Section 103 of the
   General Corporation Law of the State of Delaware.

3. The inaccuracy or defect of said Certificate is: (must be specific)

   > The name of the Corporation should be 1 word and not two words.

4. Article 1 _____ of the Certificate is corrected to read as follows:

   > The name of the corporation is WellClarity, Inc.
   > (the  Corporation ).

**IN WITNESS WHEREOF**, said corporation has caused this Certificate of Correction
this 6th _____ day of May _____, A.D. 2021 .

By: _____
Authorized Officer
Name: Biagio Graffagnino _____
Print or Type
Title: President _____

State of Delaware
Secretary of State
Division of Corporations
Delivered  12:36 PM 05/07/2021
FILED  12:36 PM 05/07/2021
SR 20211651408  - File Number 5866019

**DGN Pharmacy, Inc.**
**DBA PersonalRX**
**20 Murray Hill Parkway – Suite 210**
**East Rutherford, NJ 07073**

**June 4, 2020**

Mr. Biagio Graffagnino
155-21 Bridgeton Street
Howard Beach, NY 11414

Dear Biagio:

On behalf of DGN Pharmacy, Inc. (the "Company"), I am pleased to offer you an officers position with the Company. The terms and conditions of your employment are set forth below.

1.      Position. Your position with the Company will be Chief Revenue Officer.

2.      Start Date: June 4, 2020.

3.      Salary/Commission. The Company will pay you a salary at a bi-weekly rate of $6538.46 payable in accordance with the Company's standard payroll schedule and subject to applicable deductions and withholdings, for an initial period of not less than six months from the date hereof. Your right to receive commissions is "vested" and your heirs shall be entitled to receive same. Commission will be for each patient or group, entity, or partnership that Mr. Graffagnino introduces, brings in, or influences.

4.      Benefits.  You will be eligible to participate in benefits programs to the same extent as, and subject to the same terms, conditions and limitations applicable to, other employees of the Company of similar rank and tenure. These benefits currently include contributions for the employee towards the basic health insurance plan.

5.     Taxes. All forms of compensation referred to in this Offer Letter are subject to reduction to reflect applicable withholding and payroll taxes and other deductions required by law. You hereby acknowledge that the Company does not have a duty to design its compensation policies in a manner that minimizes your tax liabilities, and you will not make any claim against the Company or its board of directors related to tax liabilities arising from your compensation.

6.     Interpretation, Amendment and Enforcement. This Offer Letter, the Employee Confidentiality and Assignment Agreement of this Offer Letter constitute the complete agreement between you and the Company, contain all of the terms of your employment with the Company and supersede any prior agreements, representations or understandings (whether written, oral or implied) between you and the Company. The terms of this Offer Letter and the resolution of any disputes as to the meaning, effect, performance or validity of this Offer Letter or arising out of, related to, or in any way connected with, this Offer Letter, your employment with the Company or any other relationship between you and the Company (the "Disputes") will be governed by New Jersey law, excluding laws relating to conflicts or choice of law. You and the Company submit to the exclusive personal jurisdiction of the federal and state courts located in the state of New Jersey connection with any Dispute or any claim related to any Dispute.

     In addition, this offer is subject satisfactory background and reference checks. As with all employees, our offer to you is also contingent on your submission of satisfactory proof of your identity and your legal authorization to work in the United States.

     We are excited about the prospect of having you join the Company. We look forward to receiving a response from you within one week acknowledging, by signing below, that you have accepted this offer of employment.

Very truly yours,

DGN PHARMACY, INC.

2

3

By: _____
Name:
Title: CEO

I have read and accept this employment offer:

Signature

Dated: 6/4/20

4

# Exhibit "A"

## PersonalRX Employee Commission Schedule

Employee Name: <u>Biagio Graffagnino</u> ———    Date: <u>6/4/2020</u>

**Commission Structure**

**New Patients:**
5% of collected patient revenue for the first 36 months, on all patients where Biagio Graffagnino was the procuring cause of such revenue.

**Recurring Revenue:**
3% of collected patient revenue, starting 37th month and thereafter in perpetuity, on all patients where Biagio Graffagnino was the procuring cause of such revenue.

Employee will be paid commissions for every new patient that he is the procuring cause and/or introduces and/or brings in to PersonalRX. If the employee brings in a new group, then he will be paid commission for every member that is associated with that group. For each patient, employee will receive commissions as outlined above for each patient. Even after employee's separation from employment, employee and/or his assigns, heirs, and beneficiaries, shall receive commission for every new patient that enrolls with PersonalRX from any group introduced by employee, any individual members or members from groups or entities introduced or brought in, or being the procurement cause, shall be credited towards the commission structure.

5

[5] Page 4 of 10, BG, 6/4/20

6

## DGN PHARMACY, INC.

### Proprietary Information and Assignment Agreement

In consideration and as a condition of my service relationship, whether as an employee, consultant, advisor or otherwise (collectively, "Service Relationship") with, or my continued Service Relationship by, DGN Pharmacy, Inc. or any of its subsidiaries (collectively, the "Company"), I, Biagio Graffagnino, agree to the terms and provisions of this Proprietary Information and Assignment Agreement (this "Agreement") as follows:

---

1.    **Proprietary Information.** I agree that all information, whether or not in writing, concerning the Company's technology, financial affairs which the Company has not released to the general public and which is provided to me by or on behalf of the Company in connection with the Service Relationship, of which I have obtained through my Service Relationships or is generated by me as an intended deliverable to the Company pursuant to the Service Relationship (collectively, "Proprietary Information") is and will be the exclusive property of the Company. By way of illustration, Proprietary Information may include information or material which has not been made generally available to the public, such as: (a) *corporate information,* including plans, strategies, methods, policies, resolutions, negotiations or litigation; (b) *marketing information,* including strategies, methods, or market analyses or projections; (c) *financial information,* including cost and performance data, debt arrangements, equity structure, investors and holdings, purchasing and sales data and price lists; and (d) *operational and technological information,* including plans, specifications, manuals, forms, software, designs, methods, procedures, formulas, discoveries, inventions, improvements and (e) *personnel information,* including reporting or organizational structure, resumes, compensation structure. Notwithstanding the above, Mr. Graffagnino may continue to do business with customers, whether individuals, partnerships, entities, or corporations with whom he has previously done business or has direct or indirect relationship.

2.    **Recognition of Company's Rights.** I will cooperate with the Company and use my best efforts to prevent the unauthorized disclosure of all Proprietary Information. I will deliver to the Company all copies of Proprietary Information in my possession or control upon the earlier of a request by the Company or termination of my Service Relationship.

3.    **Rights of Others.** I understand that the Company is now and may hereafter be subject to non-disclosure or confidentiality agreements with third persons which require the Company to protect or refrain from use of proprietary information.

4.    **Avoidance of Conflict of Interest.** While a Service Provider of the Company, I may engage in any other business activity that conflicts with my duties to the Company. I am not required to advise the president of the Company or his or her nominee at such time as any activity of either the Company or another business presents me with a conflict of interest or the appearance of a conflict of interest as Service Provider of the Company.

5.    **Developments.** I am not required to make full and prompt disclosure to the Company of all inventions, discoveries, designs, developments, methods, modifications, improvements, processes, algorithms, databases, computer programs, formulae, techniques, trade secrets, graphics or images, and audio or visual works and other works of authorship (collectively "Developments"), whether or not patentable or copyrightable, that are created, made, conceived or reduced to practice by me (alone or jointly with others) or under my direction during the period of my Service Relationship. I acknowledge that all work performed by me is [7]not on a "work for hire" basis, and I hereby do not assign and transfer and, to any such assignment, that (a) relate to the business of the Company or any of the products or services being researched, developed, manufactured or sold by the Company or which may be used with such products or services; or (b) result from tasks assigned to me by the Company prior to or following the date hereof; or (c) result from the use of premises or personal property (whether tangible or intangible) owned, leased or contracted for by the Company ("Company-Related Developments"), and all related patents, patent applications, trademarks and trademark applications, copyrights and copyright applications, and other intellectual property rights in all countries and territories worldwide and under any international conventions ("Intellectual Property Rights").

To preclude any possible uncertainty, I have set forth on Exhibit A attached hereto a complete list of Developments that I have, alone or jointly with others, conceived, developed or reduced to practice prior to the commencement of my Service Relationship with the Company that I consider to be my property or the property of third parties and that I wish to have excluded from the scope of this Agreement ("Prior Inventions"). If disclosure of any such Prior Invention would cause me to violate any prior confidentiality agreement, I understand that I am not to list such Prior Inventions in Exhibit A but am only to disclose a cursory name for each such invention, a listing of the party(ies) to whom it belongs and the fact that full disclosure as to such inventions has not been made for that reason. I have also listed on Exhibit A all patents and patent applications in which I am named as an inventor, other than those which have been assigned to the Company ("Other Patent Rights"). If no such disclosure is attached, I represent that there are no Prior Inventions or Other Patent Rights. If, in the course of my Service Relationship with the Company, I incorporate a Prior Invention into a Company product, process or machine or other work done for the Company, I hereby do not grant to the Company a nonexclusive, royalty-free, paid-up, irrevocable, worldwide license (with the full right to sublicense) to make, have made, modify, use, sell, offer for sale and import such Prior Invention. Notwithstanding the foregoing, I may incorporate, or permit to be incorporated, Prior Inventions in any Company-Related Development without the Company's prior written consent. This Agreement does not obligate me to assign to the Company any Development which, in my judgment of the Company, reasonably exercised, is developed by me. I understand that to the extent this Agreement is required to be construed in accordance with the laws of any state which precludes a requirement in a service provider to assign certain classes of inventions made by a service provider, this paragraph 5 will be interpreted not to apply to any invention which a court rules and/or the Company agrees falls within such classes. I also hereby waive all claims to any moral rights or other special rights which I may have or accrue in any Company-Related Developments.

---

[7] Page 6 of 10, BG, 6/4/20

6.    **Documents and Other Materials.** I will keep and maintain adequate and current records of all Proprietary Information and Company-Related Developments developed by me during my Service Relationship, which records will be available to and remain the sole property of the Company at all times.

All files, letters, notes, memoranda, reports, records, data, sketches, drawings, notebooks, layouts, charts, quotations and proposals, specification sheets, or other written, photographic or other tangible material containing Proprietary Information, whether created by me or others, which come into my custody or possession, are the exclusive property of the Company to be used by me only in the performance of my duties for the Company. Any property situated on the Company's premises and owned by the Company, including without limitation computers, disks and other storage media, filing cabinets or other work areas, is subject to inspection by the Company at any time with or without notice. In the event of the termination of my Service Relationship for any reason, I will deliver to the Company all files, letters, notes, memoranda, reports, records, data, sketches, drawings, notebooks, layouts, charts, quotations and proposals, specification sheets, or other written, photographic or other tangible material containing Proprietary Information, and other materials of any nature pertaining to the Proprietary Information of the Company and to my work, and will not take or keep in my possession any of the foregoing or any copies.

7.    **Enforcement of Intellectual Property Rights.** I may cooperate fully with the Company, both during and after my Service Relationship with the Company, with respect to the procurement, maintenance and enforcement of Intellectual Property Rights in Company-Related Developments. I may sign, both during and after the term of this Agreement, all papers, including without limitation copyright applications, patent applications, declarations, oaths, assignments of priority rights, which the Company may deem necessary or desirable in order to protect its rights and interests in any Company-Related Development.

8.    **Non-Competition and Non-Solicitation**

Parties agree that this agreement does not restrict the employee to solicit clients, groups, entities, individuals, and partnerships or any of his relationships.

9.    **Government Contracts.** I acknowledge that the Company may have from time to time agreements with other persons or with the United States Government or its agencies.

10.   **Prior Agreements.** I hereby represent that, I am not bound by the terms of any agreement with any previous employer.

11.   **Remedies Upon Breach.** I understand that the restrictions contained in this Agreement are necessary for the protection of the business and goodwill of the Company and I

consider them to be reasonable for such purpose. Any breach of this Agreement shall entitle the parties to costs and legal fees as [8]deemed by the courts likely to cause the parties, substantial and irrevocable damage and therefore.

12.   **Use of Voice, Image and Likeness.** Written-Permission must be given for the use of my voice, image and likeness, with or without using my name, in connection with the products and/or services of the Company, for the purposes of advertising and promoting such products and/or services and/or the Company, and/or for other purposes deemed appropriate by the Company in its reasonable discretion, except to the extent expressly prohibited by law.

13.   **Publications and Public Statements.** I will not need to obtain the Company's written approval before publishing or submitting for publication any material that relates to my work at the Company and/or incorporates any Proprietary Information. To the best of my ability I will focus on ensuring that the Company delivers a consistent message about its products, services and operations to the public.

14.   **Survival and Assignment by the Company.** I understand that my obligations under this Agreement will continue in accordance with its express terms regardless of any changes in my title, position, duties, salary, compensation or benefits or other terms and conditions of my Service Relationship. I further understand that the obligations under this Agreement will continue following the termination of my Service Relationship regardless of the manner of such termination and will be binding. The Company will have the right to assign this Agreement to its affiliates, successors and assigns. I expressly consent to be bound by the provisions of this Agreement for the benefit of the parties or any parent, subsidiary or affiliate to whose employ I may be transferred without the necessity that this Agreement be resigned at the time of such transfer.

15.   **Severability.** In case any provisions (or portions thereof) contained in this Agreement shall, for any reason, be held invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect the other provisions of this Agreement, and this Agreement shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein. If, moreover, any one or more of the provisions contained in this Agreement shall for any reason be held to be excessively broad as to duration, geographical scope, activity or subject, it shall be construed by limiting and reducing it, so as to be enforceable to the extent compatible with the applicable law as it shall then appear.

16.   **Interpretation.** This Agreement will be deemed to be made and entered into in the State of [Delaware] [New York], and will in all respects be interpreted, enforced and governed under the laws of the State of [Delaware] [New York].

---

[8] Page 7 of 10, BG, 6/4/20

7.

I UNDERSTAND THAT THIS AGREEMENT AFFECTS IMPORTANT RIGHTS. BY SIGNING BELOW, I
CERTIFY THAT I HAVE READ IT CAREFULLY AND AM SATISFIED THAT I UNDERSTAND IT COMPLETELY.

9

IN WITNESS WHEREOF, the undersigned has executed this Agreement as a sealed instrument as of the date set forth below.

Signed: _____

Date:  June 4, 2020

10

[Signature Page to Confidentiality and Assignment Agreement]

**EXHIBIT A**

Page 9 of 10, BG, 6/4/20

To:     **DGN Pharmacy, Inc.**

From: _____

Date: _____

SUBJECT:     **Prior Inventions**

The following is a complete list of all inventions or improvements relevant to the subject matter of my Service Relationship with the Company that have been made or conceived or first reduced to practice by me alone or jointly with others prior to my engagement by the Company:

ϒ     No inventions or improvements

ϒ     See below:

_____

_____

_____

ϒ     Additional sheets attached

The following is a list of all patents and patent applications in which I have been named as an inventor:

ϒ     None

ϒ     See below:

_____

_____

[11] _____

_____

**EXHIBIT C**