| |
|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY |
| Caption in Compliance with D.N.J. LBR 9004-1(b)<br>HELLRING LINDEMAN GOLDSTEIN<br>  & SIEGAL LLP<br>Patricia A. Staiano, Esq.<br>Attorneys for Benjamin A. Stanziale, Jr.,<br>  Chapter 7 Trustee for Health Tech Harbor, Inc.<br>One Gateway Center<br>Newark, New Jersey 07102-5323<br>973.621.9020<br>pstaiano@hlgslaw.com |

In Re:

HEALTH TECH HARBOR, INC.,

            Debtor.

Case No 20-19017 (RG)

Honorable Rosemary Gambardella

Chapter 7

Hearing Date: June 21 , 2020 at 10 a.m.

## SUPPLEMENTAL CERTIFICATION OF KARL KNECHTEL IN SUPPORT OF MOTION FOR ENTRY OF AN ORDER APPROVING SETTLEMENT AND FOR RELATED RELIEF

Karl Knechtel, CPA, of full age, hereby certifies as follows:

1. I am a Certified Public Accountant, licensed under the laws of the State of New York and am a member of RK Consultants, LLC ("RKC," "our," and "we"). RKC has been retained by Benjamin A. Stanziale, Jr., the Chapter 7 Trustee (the "Trustee") for Health Tech Harbor, Inc. (the "Debtor" or "HTH") as his accountants and financial advisor.

2. The Trustee requested RKC to review the historical financial information of DGN Pharmacy, Inc. d/b/a PersonalRX ("PersonalRX") and various financial projections in order to assist the Trustee in his consideration of the settlement with PersonalRX and Lawrence H. Margolis ("Margolis"). The principal purposes of this review

was to evaluate the overall financial strength of PersonalRX and its ability to satisfy any judgment that might be obtained against it, and evaluate transfers identified in PersonalRX financial statements, general ledger or bank statements from PersonalRX to or for the benefit of Margolis or other potential related parties in connection with evaluating the proposed settlement.

3. I submit this Certification in connection with the Trustee's motion for an order, pursuant to FRBP 9019, seeking approval of a settlement with PersonalRX and Margolis and to address the Objection thereto. This Certification supplements my Certification of May 10, 2022.

4. The facts set forth in this Certification are based upon my personal knowledge and review of certain relevant documents received to date, including the Debtor's books and records, as well as books and records for PersonalRX provided by Margolis.

5. RKC was not engaged to, and did not perform an audit, the objective of which would be the expression of an opinion. Had we performed additional procedures, other matters might have come to our attention that we would have reported to the Trustee.

6. For purposes of our review and analysis, we accepted as accurate the financial records that were provided to us.

## I.    Case Background

7. On July 29, 2020, several creditors commenced an involuntary petition for relief under chapter 7 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of New Jersey against HTH. On July 22, 2021, an order for relief under the Bankruptcy Code was granted.

## II.    Further Findings

2

8. Based upon our review of the records provided by PersonalRX we note that during the period January 1, 2017 through December 31, 2020 (the "Review Period"), Margolis, as the chief executive officer and president of PersonalRX, received disbursements or benefits of less than $900,000 in the aggregate for the 4 year Review Period (average of less than $225,000/year) in the form of loan repayments, distributions, credit card expense allocations and payments to related parties. Other than the foregoing disbursements and benefits, Margolis did not draw a salary during the Review Period. We have reviewed PersonalRX's financial records and did not note any other material items that were transferred to or on the behalf of Mr. Margolis.

9. During the Review Period, we note, for example, that PersonalRX saw an approximate 60% decline in revenue for its fiscal year ended December 31, 2018 versus the year ended December 31, 2017. PersonalRX incurred significant expenses and net losses at all times during the Review Period. Advances from HTH were used by PersonalRX to fund operations.

10. In addition to providing general working capital, the HTH advances were used to pay down third-party debt and past due trade payables, make debt service payments on outstanding loans, and pay for software development. Based upon our review of the financial statements provided, including for 2021, it appears that PersonalRX has limited tangible assets and that any intangible assets would likely have little to no value in a liquidation scenario, resulting in extremely limited recovery to unsecured creditors. Even under the most optimistic scenario, recovery from PRX may reach a few hundred thousand dollars, with debts exceeding $15 million overall, without consideration of the costs involved to obtain any recovery.

I certify under penalty of perjury that the foregoing information is true and correct.

Dated: June 17, 2022

_____
KARL KNECHTEL, CPA

342211