| |
|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY |
| Caption in Compliance with D.N.J. LBR 9004-1(b)<br>HELLRING LINDEMAN GOLDSTEIN<br>  & SIEGAL LLP<br>Patricia A. Staiano, Esq.<br>Attorneys for Benjamin A. Stanziale, Jr.<br>   Chapter 7 Trustee<br>One Gateway Center<br>Newark, New Jersey 07102-5323<br>973.621.9020<br>pstaiano@hlgslaw.com |
| In Re:<br><br>HEALTH TECH HARBOR, INC.,<br><br>               Debtor. |

Case No 20-19017 (RG)

Judge: Rosemary Gambardella

Chapter 7

Hearing Date: October 18, 2022
                at 10:00 a.m.

FIRST INTERIM APPLICATION BY HELLRING LINDEMAN
GOLDSTEIN & SIEGAL LLP, ATTORNEYS FOR BENJAMIN A.
STANZIALE, JR., CHAPTER 7 TRUSTEE, FOR ALLOWANCE OF
COMPENSATION AND REIMBURSEMENT OF EXPENSES

TO:    THE HONORABLE ROSEMARY GAMBARDELLA
        UNITED STATES BANKRUPTCY JUDGE

        The Application of Hellring Lindeman Goldstein & Siegal LLP ("HLGS" or "Applicants"), attorneys for Benjamin A. Stanziale, Jr., the Chapter 7 Trustee herein, respectfully represents and sets forth as follows:

        1.    Applicants are attorneys at law of the State of New Jersey admitted to practice before this Court. Applicants are attorneys for Benjamin A. Stanziale, Jr., the Chapter 7 Trustee ("Trustee") for Health Tech Harbor, Inc. ("Debtor"), and file this application in support of a first interim award of attorneys' fees and reimbursement of expenses for services rendered as

attorneys for the Trustee in the Chapter 7 proceeding for the period July 23, 2021 through August 31, 2022.

2. On July 29, 2020, an involuntary Chapter 7 bankruptcy petition was filed for the Debtor in United States Bankruptcy Court for the District of New Jersey ("Court"). On July 22, 2021, the Court entered an Order for Relief. The United States Trustee for Region 3 appointed the Trustee as Chapter 7 Trustee for Debtor on July 22, 2021. By Order entered on August 4, 2021, effective July 23, 2021, the Trustee was authorized to retain Applicants as attorneys for the Chapter 7 Trustee. A copy of the Order authorizing Applicants' employment as attorney for the Chapter 7 Trustee in the Chapter 7 case is annexed hereto as Exhibit A.

3. HLGS now makes its first interim application for an award of fees and allowance of expenses as attorneys to the Chapter 7 Trustee in the Chapter 7 case. Applicants seek this first interim award in the Chapter 7 case of $339,340.00 in fees and $2,662.91 for reimbursement of out-of-pocket expenses, for a total award of $342,002.91.

4. The specific services performed by HLGS are detailed in the billing submitted by HLGS attached hereto as Exhibit B, the law firm's computer billing records.

**SUMMARY OF LEGAL SERVICES RENDERED**

Applicants provided legal services in the following areas:

5. Applicants prepared and filed an application for the Trustee to retain an accountant in this matter principally to engage in the substantial forensic accounting work occasioned by the nature of the case, as well as to deal address any tax issues that may arise.

6. Prior to the entry of the Order for Relief, the Debtor filed an action against Han Benefit Advantage, Inc. d/b/a BenAdvance ("BenAdvance") in the Superior Court of New Jersey seeking to collect amounts due on a Demand Promissory Note, asserted to total in principal and interest to that date $2,310,713.25, plus accruing interest. The action was removed

2

to the Bankruptcy Court and was pending under Adv. Pro. No. 21-01278. Applicants engaged in extensive negotiation and discussion regarding settlement of this action and related matters and claims with BenAdvance counsel and counsel for the vast majority of Debtor's creditors, who supported this settlement and indirectly were involved in same. In connection with these negotiations, Applicants engaged in extensive consultation and discussion with the Trustee and Trustee's accountants.

7. As part of these negotiations, Applicants, in consultation with Trustee's accountants, reviewed and considered significant amounts of documents and information presented by BenAdvance and various related entities and individuals principally pertaining to the wherewithal of BenAdvance, to various inter-entity transfers and to potential claims against other related entities or individuals. Applicants further, in consultation with Trustee's accountants, made a series of requests for additional information and documents to gain a further understanding of, and more complete information regarding, these matters. Thus, Applicants engaged in extensive "informal" discovery with BenAdvance.

8. In addition, since the amount and status of the majority of claims against the Debtor was intimately involved in the ultimate settlement of the BenAdvance action and related matters, Applicants also reviewed and analyzed the proofs of claim filed in this action in relation to the proposed terms of settlement, and consulted regarding the need for the filing or amendment of certain claims.

9. Applicants then negotiated a form of Settlement Agreement ("Agreement") with counsel for BenAdvance and related entities, in consultation with principal creditors' counsel. Applicants reviewed and revised this Agreement on multiple occasions. The Agreement ultimately addressed not only claims against BenAdvance, but claims against Health Alliance Network, Inc. ("HAN") and Health Alliance Group, Inc. ("HAG"), and resulted in the

3

payments due to the estate totaling $350,000 and reduction in filed claims against the estate of in excess of $2.8 million. The initial settlement payment of $275,000 was made in a timely manner, but the second payment of $75,000 was not timely made with only a further sum of $25,000 having been paid on time. Thus, Applicants engaged in further communication with BenAdvance counsel seeking such payment and providing notice as required by the Agreement in case of default. Applicants prepared and submitted to the Court an Application and form of Judgment in accordance with the Agreement seeking the Court's entry of a Judgment in the amount of the $50,000 remaining due against BenAdvance, HAN, HAG and Anthony V. Milone, BenAdvance's principal. Applicants' efforts were successful and the Trustee received the remaining $50,000.00 due and owing from BenAdvance in full payment of the settlement amount.

10. Applicants prepared and filed motion papers seeking the Court's approval of this settlement, including a letter brief, Certification in support of the Trustee, and a Certification of Trustee's accountants prepared with the accountants, as well as a Notice of Settlement of Controversy. Applicants also negotiated the form of a Declaration submitted by BenAdvance's principal and an Affidavit submitted by Debtor's largest creditor in support of the settlement, and negotiated and drafted a form of Consent Judgment. These filings resulted in the Court's approval of the settlement.

11. Applicants also negotiated, in consultation with Trustee's accountants, the form of a Supplemental Declaration submitted by BenAdvance's principal pursuant to the Agreement swearing to the validity of key pieces of information and documentation submitted by BenAdvance, including regarding related entities, as part of the "informal" discovery leading to the settlement. As part of this process, Applicants requested certain further documentation and edited forms of the Supplemental Declaration.

12. Applicants communicated with Debtor's counsel to insure payment of the amounts due pursuant to the BenAdvance settlement, as a result of which the estate was paid a total of $350,000.

13. The Estate also had a claim of approximately $7.7 million per the Debtor's Schedules, based on funds the Debtor had loaned to DGN Pharmacy, Inc. d/b/a PersonalRX ("PRX"). Applicants negotiated and drafted a form of Non-Disclosure Agreement with PRX counsel in order that PRX would provide to Trustee's professionals substantial amounts of underlying financial data regarding PRX. Applicants participated in a September 27, 2021 conference call with PRX's principal and a broker seeking financing for PRX to have a discussion regarding PRX's finances.

14. Applicants engaged in negotiation and discussion regarding settlement of this claim and related matters with PRX's counsel. In connection with these negotiations, Applicants engaged in extensive consultation and discussion with the Trustee and Trustee's accountants. Applicants also kept counsel for many of the Debtor's creditors apprised of the negotiations with PRX.

15. In connection with these negotiations, Applicants engaged in extensive consultation and discussion with the Trustee and Trustee's accountants. Applicants reviewed and analyzed multiple settlement proposal letters from PRX counsel. Applicants participated in a February 10, 2022 conference call, including PRX's principal, its counsel, its broker, counsel for its new investor, and representatives of that investor.

16. As part of these negotiations, Applicants, in consultation with Trustee's accountants, reviewed and considered significant amounts of documents and information presented by PRX, principally pertaining to the wherewithal of PRX, to PRX's new investor, and to other PRX debts that were satisfied or intended to be satisfied. Applicants further, in

consultation with Trustee's accountants, made requests for additional information and documents to gain a further understanding of, and more complete information regarding, these matters. Thus, Applicants engaged in extensive "informal" discovery with PRX.

17. Applicants then negotiated with counsel for PRX a form of Settlement Agreement ("PRX Agreement") with PRX and its principal, Lawrence Margolis ("Margolis"). Applicants also drafted this PRX Agreement. The PRX Agreement resulted in the payment to the estate of $1,800,000 and reduction in filed claims against the estate of in excess of $828,000.

18. Applicants prepared and filed motion papers seeking the Court's approval of this settlement, including a letter brief, Certification in support of the Trustee, and a Certification of Trustee's accountants prepared with the accountants, as well as a Notice of Settlement of Controversy. Applicants also negotiated the form of a Certification submitted by PRX's President in support of the settlement. Applicants engaged in discussions with counsel for Debtor's principal unsecured creditors, and conferenced directly with Debtor's largest creditor on May 3, 2022, regarding the settlement.

19. Applicants prepared responsive papers to the Objection and Supplemental Objection to the settlement filed by Debtor's largest creditor. Applicants prepared for and attended two hearings where Applicants argued for approval of the settlement, which took place on June 21 and 28, 2022, as well as the hearing on July 7, 2022 where the Court read its Opinion. Applicants also attended Margolis' deposition on June 24, 2022, which had been requested by the creditor and directed by this Court. All of the foregoing actions resulted in the Court's approval of the settlement. Applicants communicated with counsel for PRX and with Margolis regarding the delay in payment of the settlement according to the settlement's terms resulting in the receipt of the $1.8 million settlement amount on August 3, 2022.

20. Applicants acted expeditiously to respond to the request by the Debtor's largest creditor to review PRX financial documents provided to the Trustee as part of the process of arriving at the settlement with PRX. Applicants obtained PRX's permission for the release of these documents, which had originally been produced to the Trustee pursuant to a Non-Disclosure Agreement, and provided the documents to the creditor.

21. Applicants engaged in a detailed review and analysis of proofs of claims filed in this case and the Court's claims register to determine whether the Trustee needed to take action with respect to any of the filed claims. Applicants prepared and filed a motion with respect to the status of the late-filed claim of Goodwin Proctor LLP resulting in an Order of this Court in accord with that motion. Applicants engaged in a series of communications with various creditors who had filed proofs of claim, and/or their counsel or representatives, seeking support or additional support for the filed claims and/or to seek clarification of discrepancies with respect to same. Applicants researched, prepared and filed a motion to expunge the claim of Abouyan Dobbs LLC, which is still pending. Applicants prepared and filed a motion to expunge the claim of Daniel J. Wampler, which is still pending, although the motion was unopposed. Applicants negotiated a form of Consent Order with claimant Keith Gallant reclassifying as a general unsecured claim his claim filed as a priority wage claim, and then prepared and filed that Order and a supporting Application, resulting in the reclassification of that claim. Applicants negotiated a form of Consent Order with claimant Dustin Wilson reducing the amount of his general unsecured claim, and then prepared and filed that Order and a supporting Application, resulting in the reduction of that claim.

22. Applicants engaged in ongoing communication and consultation with the Trustees' accountants and the Trustee regarding various tax filings that may be required, the filing of returns, related tax questions, and questions regarding the IRS proof of claim.

7

23. Applicants prepared and filed this fee application and worked with the Trustee's accountants and the Trustee on this and the accountants' fee application.

24. In addition to the above litigation and other matters, Applicants addressed all creditor inquiries, resolved all matters directed by the Trustee, and interfaced with all parties to the case on a regular basis.

25. Details of the Applicants' services are set out in the time records annexed hereto as Exhibit B.

26. Applicants believe that the foregoing services are reasonable and necessary and were beneficial to the Trustee and the Estate.

## SUMMARY OF TIME CHARGES AND EXPENSES

27. Applicants have staffed this case and distributed work in an efficient and effective manner and have performed services on behalf of the Trustee at a rate which the Applicants believe is a reasonable rate for the services performed. The principal attorney in charge of the matter is Patricia A. Staiano, Esq.

28. Exhibit B attached hereto sets forth the name of each attorney who performed services, the date of such services and the time expended. It is respectfully submitted that the foregoing services rendered by Applicants as attorneys for the Trustee were necessary and beneficial to the creditors of this Estate.

29. The services performed from July 23, 2021 through August 31, 2022 total 613.60 hours in an amount of $339,340.00. This time and requested fee does not include 34.9 hours in time voluntarily not charged in this fee application due to the duplicative and ministerial nature of some of the services performed, voluntarily reducing the requested fee by $18,170.00. The following is a summary of the professionals who performed the services, their hourly rate and time expended:

8

| NAME OF PROFESSIONAL & TITLE | YEAR ADMITTED (Or Years of Professional Service) | HOURS | RATE | FEE |
|---|---|---|---|---|
| Patricia A. Staiano, Esq. | 1986 | 325.40 | $600.00 | $195,240.00 |
| Bruce S. Etterman, Esq. | 1984 | 288.20 | $500.00 | $144,100.00 |
| **TOTALS** | | 613.60 | | $339,340.00 |

30. In addition to the legal services performed by this firm, Applicants have incurred disbursements for the applicable period in the amount of $2,662.91. The disbursements are as set forth below:

| | DISBURSEMENTS | AMOUNT |
|---|---|---|
| (a) | **Computerized Assisted Legal Research**<br>Westlaw, Lexis and a description of manner calculated | $846.14 |
| (b) | **Pacer Fees**<br>Payable to the Pacer Service Center for search and/or print. | 49.10 |
| (c) | **Case Specific Telephone/Conference Call Charges**<br>Exclusive of overhead charges. | 1,367.85 |
| (d) | **In-House Reproduction Services**<br>Exclusive of overhead charges. | 27.30 |
| (f) | **Outside Reproduction Services**<br>Including scanning services. | 154.70 |
| (g) | **Courier & Express Carriers**<br>Overnight and personal delivery. (Messenger/Courier and FedEx) | 23.52 |
| (h) | **Postage** | 194.30 |
| | **DISBURSEMENTS TOTAL:** | **$2,662.91** |

WHEREFORE, Applicant Hellring Lindeman Goldstein & Siegal LLP respectfully requests its first interim award as attorneys for Benjamin A. Stanziale, Jr.,

9

Chapter 7 Trustee in the amount of $339,340.00 together with reimbursement for Applicants' expenses in the amount of $2,662.91 for a total award of $342,002.91.

                              HELLRING LINDEMAN GOLDSTEIN & SIEGAL LLP
                              Attorneys for Benjamin A. Stanziale, Jr., Chapter 7 Trustee


By:       /s/ Patricia A. Staiano
            PATRICIA A. STAIANO
            A Member of the Firm

Dated:   September 14, 2022

10

321595